STATE EX REL. LONDON & LANCASHIRE INDEMNITY
COMPANY OF AMERICA v. DISTRICT COURT OF
HENNEPIN COUNTY AND ANOTHER.[1]

January 3, 1919.

No. 21,156.

**Workmen's Compensation Act.**

1. The evidence sustains the finding of the trial court that an accident resulting in death was not caused by the intoxication of the de-

[1]Reported in 170 N. W. 218.

cedent and an award was not prevented by the provision of the 'Workmen's Compensation Act contained in G. S. 1913, § 8203.

**Same — accident arising out of employment — finding sustained.**

2. The evidence sustains a finding that an accident resulting in the death of the decedent, a traveling man, who was driving an auto furnished by his employer and was on his way to his home, which was the point from which he worked, arose in the course of his employment.

**Same — liability of employer's insurer.**

3. The indemnity policy issued by the relator covered an employee of the insured traveling in its service though outside the state.

Upon the relation of the London & Lancashire Indemnity Company of America the supreme court granted its writ of certiorari directed to the district court of Hennepin county and the Honorable William E. Hale, one of the judges thereof, to review the proceedings in that court under the Workmen's Compensation Act brought by Lena Chambers, widow of Thomas H. Chambers and mother of Marion Chambers, against C. C. Wyman & Company, employer. Affirmed.

*John F. Bernhagen,* for relator.

*McNamara & Waters,* for Lena Chambers.

*H. V. Mercer & Co.* for C. C. Wyman & Co.

DIBELL, J.

Certiorari to the district court of Hennepin to review its judgment awarding compensation under the Workmen's Compensation Act for the death of Thomas H. Chambers. The judgment gave compensation against the relator insurance company and the employer and fixed the obligations between themselves of the insurance company and the employer.

Chambers was in the employ of C. C. Wyman & Company of Minneapolis as a traveling solicitor in the grain business. He was killed in North Dakota on May 5, 1917, by the overturning of an auto furnished him by the company and which he was driving. One phase of the case was considered in State v. District Court of Hennepin County, 139 Minn. 205, 166 N. W. 185.

The Wyman company carried indemnity insurance in the relator. The

relator claims that there can be no recovery under the compensation act because the intoxication of Chambers was the cause of the accident, and further because the accident did not arise in the course of his employment. It also claims that its policy did not promise indemnity to the Wyman company for accidents to its employees without the state and therefore it is not liable. These are the issues.

1. The relator claims that Chambers was intoxicated and is precluded from recovering by G. S. 1913, § 8203, which prevents recovery when intoxication is the "natural or proximate cause" of the accident. The burden of proof is put upon the employer. The court found against the relator and its finding is abundantly sustained.

2. The relator claims that the accident did not occur in the course of Chambers' employment. He was engaged as a solicitor in the grain business and had his home at Bismarck, which was the point from which he worked. He had been using the auto in the course of his business during the day and was returning homeward. The evidence sustains if indeed it does not require a finding that he was in the course of his employment. It is much stronger than the evidence in State v. District Court of Hennepin County, supra, page 61, 169 N. W. 274, which is in some respects similar.

3. The controversy between the Wyman company and the insurance company involves the single question whether the insurance policy covered employees outside of Minnesota and the issue is raised by appropriate pleadings between them.

The policy purported to give indemnity in consideration of the payment of the estimated premium and the representations contained in a schedule attached. This schedule stated the address of the insured, the duration of the risk, the location of all places where business operations were to be conducted, the total estimated annual wages, the description of business operations to be insured, and a number of other matters not presently material. It stated the place of business operations to be at Minneapolis and Duluth, giving the office address of the insured at both places, and elsewhere in Minnesota. Under the head of "Description of business operations to be insured" there was the following:

"Grain commission.

"Clerical force and other employees engaged exclusively in office duties.

"Salesmen, collectors and messengers, traveling in Minnesota.

"Drivers of automobiles and their helpers.

"Drivers of teams and their helpers."

The Wyman company did not prepare nor sign this schedule. It was not presented to it. It came attached to the policy from the agents of the insurance company a few days before the expiration of another policy the place of which it was to take. The policy itself gave indemnity as follows:

"(2) Against liability to pay the compensation, and to furnish the medical and surgical treatment provided by the Minnesota Workmen's Compensation Law. Condition A: The agreement shall apply to accidents occurring at the place or places described in the Schedule, and shall include also drivers and their helpers, salesmen, collectors and messengers, whose wages are included in the estimated pay roll on which the premium of this policy is based, wherever they may be in the service of the assured, and while engaged in the trade or business described in the Schedule."

The description in the schedule is general in terms. It contains no express territorial limitation of liability, but it does refer to men traveling in Minnesota under the heading quoted. The parties had in mind indemnity for liability arising under the Workmen's Compensation Act. This act applies to accidents outside the state in connection with business done in the state and incident to its conduct. In response to this schedule, if it be considered a proposal for insurance, and this is altogether favorable to the relator, the company issued a policy from which we have quoted above. In that policy it assumed to give indemnity for injuries to or the death of men of the class to which Chambers belonged "whose wages are included in the estimated pay roll on which the premium of this policy is based, wherever they may be in the service of the assured, and while engaged in the trade or business described in the schedule." Chambers' wages were included in the estimated pay roll. There is no ambiguity in the policy. If there is any anywhere it comes when the policy and schedule are put together. The policy proper, in terms not susceptible of misunderstanding, gives just the indemnity which the Wyman company claims. The insurance company signed and

issued the policy, containing the promise of indemnity quoted. It can not now avoid liability because of the description in the schedule. The court was right in holding the insurance company primarily liable.

Judgment affirmed.