MARJORIE DeROSIER AND ANOTHER v. JAY W. CRAIG
COMPANY AND ANOTHER.[1]

April 28, 1944.

No. 33,667.

*Gleason, Ward & Orff,* for relators.
*Sexton, Mordaunt, Kennedy & Carroll,* for respondents.

LORING, CHIEF JUSTICE.

This case comes here on a writ of *certiorari* to review a decision of the industrial commission holding that it had no jurisdiction of a petition for award of compensation to the widow and child of Sylvester DeRosier, killed in South Dakota while there employed by the Jay W. Craig Company, the respondent-employer. DeRosier, though a resident of Minnesota, went to South Dakota seeking employment in response to an advertisement of Robert E. Lamb & Son, but after he got there he obtained employment with the Jay W.

[1]Reported in 14 N. W. (2d) 286.

Craig Company, whose principal office was in Minneapolis. The Craig company had a government contract for construction work on an airport at Pierre, South Dakota. It established headquarters there, and the enterprise was supervised and managed entirely at that place. Apparently the only connection of the work with Minnesota was that checks were drawn on the company's Minneapolis bank.

The business of constructing the airport was entirely localized in South Dakota. The contract of employment was made there, and the injury occurred in that state. Consequently we have a typical situation for the application of this rule restated by the American Law Institute:

"No recovery can be had under the Workmen's Compensation Act of a state if neither the harm occurred nor the contract of employment was made in the state." Restatement, Conflict of Laws, § 400.

We have taken no position contrary to this rule. We have, in some cases, treated one or the other element of the rule as not of controlling importance; but never, so far as we can find, have we gone contrary to both elements combined. The problem of localization was thoroughly discussed and our cases on that point reviewed in Fitzgerald v. Economic Laboratory, Inc. 216 Minn. 296, 12 N. W. (2d) 621, so it would be a work of supererogation again to review those cases. Localization of a business in this state has been treated as of great importance, as it should be, and as indicated by the cases cited in § 398 of the Minnesota Annotations to the Restatement on Conflict of Laws. But in the case at bar the evidence supporting the commission's findings, in effect, that the business of building the airport was localized in South Dakota, is compelling. So is the evidence that DeRosier sought and obtained his contract of employment in that state.

We think the rule of the Restatement is sound, simple of application, and should be adhered to in this state. It results in an affirmance of the commission's holding that it is without jurisdic-

tion in this case. Since we so hold, the effect of the South Dakota award becomes immaterial.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

The particular contract of the company under which decedent was employed at the time of his death covered the oiling of an army airport project at Pierre. The agreement therefor was executed by the company at Pierre. The equipment for the job came from both Minnesota and South Dakota, as well as from other states. The company established an office at Pierre, and a supervisory force of men and women was sent from Minneapolis to assist in the performance of the work. Checks for salaries were delivered there but were drawn on the Midland National Bank of Minneapolis. Records with reference to the job were kept in the office at Pierre and later returned to Minneapolis. Decedent was a resident of Minnesota, but his contract of employment by the company was entered into at Pierre, where he had gone on his own responsibility to look for work. The South Dakota compensation law provides death payments not to exceed $3,000, while the Minnesota compensation law would allow relators recovery up to $7,500. Minn. St. 1941, § 176.12(20), (Mason St. 1927, § 4275[20]).

At the hearing on appeal before the Minnesota industrial commission it was determined:

"That the above named employer, Jay W. Craig Company, a partnership, was at all times herein mentioned composed of Messrs. Jay W. Craig and George D. Alexander, residents of the state of Minnesota, * * * with the principal office * * * located in the city of Minneapolis, state of Minnesota."

It was further determined that the employer maintained a localized business situs in the state of South Dakota and that, since the contract of hire was made in South Dakota and performance thereof had within said state, the case was not subject to the jurisdiction of the Minnesota commission.

■ The question presented is whether the fact that decedent was employed in South Dakota would distinguish his case from the

many decisions here which uphold an employe's right to compensation under the Minnesota compensation law even though his injuries may have been sustained outside this state. Stansberry v. Monitor Stove Co. 150 Minn. 1, 183 N. W. 977, 20 A. L. R. 316; Bradtmiller v. Liquid Carbonic Co. 173 Minn. 481, 217 N. W. 680; Brameld v. Albert Dickinson Co. 186 Minn. 89, 242 N. W. 465; Fitzgerald v. Economic Laboratory, Inc. 216 Minn. 296, 12 N. W. (2d) 621.

Respondents urge that the general rule governing the situation is set forth in Restatement, Conflict of Laws, § 400, which is as follows:

"No recovery can be had under the Workmen's Compensation Act of a state if neither the harm occurred nor the contract of employment was made in the state."

An investigation of the authorities indicates that many states have adopted and followed this rule. It does not appear, however, that Minnesota is numbered among the states adopting the rule. Section 398 of the Restatement provides:

"A workman who enters into a contract of employment in a state in which a Workmen's Compensation Act is in force can recover compensation under the Act in that state for bodily harm arising out of and in the course of the employment, although the harm was suffered in another state, *·* *."

In the Minnesota Annotations to Restatement, Conflict of Laws, it is conceded that Minnesota does not follow the general rules above expressed. In § 398 of the Minnesota Annotations, referring to the foregoing, there is set forth the following summary:

"The results of some Minnesota cases are in accord with this section, *but the court has based the application of the act on the fact that the business of the employer was localized here rather than on the fact that the contract of employment was made here.* State ex rel. Chambers v. District Court (1918) 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347; State ex rel. Maryland Casualty Co. v. District Court (1918) 140 Minn. 427, 168 N. W. 177; State ex rel.

McCarthy Bros. Co. v. District Court (1918) 141 Minn. 61, 169 N. W. 274; State ex rel. London, etc., Indemnity Co. v. District Court (1919) 141 Minn. 348, 170 N. W. 218; Krekelberg v. Floyd Co. (1926) 166 Minn. 149, 207 N. W. 193. The court has also applied our statute to injuries received outside the state where the employer's business was localized here without stating where the contract of employment was made, Stansberry v. Monitor Stove Co. (1921) 150 Minn. 1, 183 N. W. 977, 20 A. L. R. 316; Bradtmiller v. Liquid Carbonic Co. (1928) 173 Minn. 481, 217 N. W. 680; Brameld v. Dickinson (1932) 186 Minn. 89, 242 N. W. 465.

"See (1917) 1 Minn. Law Rev. 531; (1918) 2 Minn. Law Rev. 234; (1927) 11 Minn. Law Rev. 329." (Italics supplied.)

An examination of the authorities cited confirms the view expressed in the Annotations. In none of them does the court base its decision upon the place of employment, but rather considers the localization here of the employer's business as the governing consideration.

An article by Professor Ralph H. Dwan of the faculty of the Law School, University of Minnesota, in 11 Minn. L. Rev. 341, makes reference to the Minnesota theory as follows:

"* * * Minnesota has developed and followed consistently a theory of its own. In the first case, State ex rel. Lena Chambers v. District Court [139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347], the contract was made in Minnesota *where the business of the employer was centralized;* the injury occurred in North Dakota. In holding the Minnesota Act to apply, the court, after mentioning but not stressing the contract obligation arising under the Act, went on to say:

" 'When a business is localized in a state there is nothing inconsistent with the principle of the compensation Act in requiring the employer to compensate for injuries in a service incident to its conduct sustained beyond the borders of the state.' " (Italics supplied.)

In a later article by the same author in 20 Minn. L. Rev. 26, the subject is further discussed as follows:

"One of the most interesting developments since the previous article has been the spreading influence of the Minnesota court's 'business localization' theory. * * *

     *    *    *    *    *

"The Minnesota court has used this theory consistently. In a number of cases the Minnesota Act was applied where the injury occurred outside of the state. In some of the cases it appears from the report that the contract of employment was made in Minnesota, although that fact is not stressed; in some, the place of contract is not mentioned. In one case the theory was used in applying the Minnesota Act where the contract was made outside the state but the injury occurred within the state, the place of injury not being stressed.

"In an increasing number of states this 'business localization' is regarded as an important factor in determining whether the local Act will be applied."

The author cites illustrative cases and concludes that in Minnesota, as well as in other states taking similar views,. compensation may be recovered even though the contract of employment is made and the injuries are sustained outside the state, "section 400 [Restatement, Conflict of Laws] to the contrary notwithstanding."

In a recent federal case, Severson v. Hanford Tri-State Airlines Inc. (8 Cir.) 105 F. (2d) 622, in holding the Minnesota workmen's compensation act applicable to an injured employe whose contract of employment had been made and whose injuries had been sustained outside of Minnesota, the court stated (105 F. [2d] 624):

"We do not think it of controlling importance where this contract was made. Ginsburg v. Byers, 171 Minn. 366, 214 N. W. 55. The defendant Hanford Tri-State Airlines operated this branch of its business from St. Paul, Minnesota. * * * when plaintiff was employed, it was for work in connection with defendant's fixed place of business in the City of St. Paul. In the words of the Supreme Court of Minnesota, the defendant's business was 'localized' in Minnesota."

A careful consideration of the foregoing authorities is convincing that Minnesota is committed to the above rule, and hence that it is immaterial here that decedent's contract of employment was made in South Dakota.

Here, it cannot be disputed that the employer's business was centralized in Minnesota, a factor more compelling for Minnesota jurisdiction than mere localization of business here. State ex rel. Chambers v. District Court (1918) 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347. Under the majority holding, those employes who left the Minneapolis office of respondent to go to South Dakota on this project must be held subject to the Minnesota compensation act, with its greater benefits, while relators, the widow and dependent child of decedent, must accept the lesser benefits of the South Dakota act, even though both classes of employes were engaged in the same work and were controlled from the same Minnesota office of the employer.

■ The fact that the Minnesota commission found that respondent's business was localized in South Dakota does not present complications under the localization theory. It has frequently been held that compensation acts of more than one state may be applicable to an employment accident. It cannot be doubted that, had relators elected to proceed under the South Dakota act, they would have been entitled to recovery thereunder. Such unexercised right of election does not constitute a bar to recovery under the Minnesota act. This principle is covered in Restatement, Conflict of Laws, § 402, as follows:

"Proceedings may be brought in a state under the Workmen's Compensation Act of that state, if it is applicable, although the Act of another state also is applicable."

The above doctrine seems to find approval in a recent decision of the United States Supreme Court in Magnolia Petroleum Co. v. Hunt (October 1943), wherein the Supreme Court stated (320 U. S. 430, 437, 64 S. Ct. 208, 212):

"But it does not follow that the employee who has sought and recovered an award of compensation in either state may then have recourse to the laws and courts of the other to recover a second or additional award for the same injury. Where a court must make choice of one of two conflicting statutes of different states and apply it to a cause of action which has not been previously litigated, there can be no plea of res judicata. *But when the employee who has recovered compensation for his injury in one state seeks a second recovery in another* he may be met by the plea that full faith and credit requires that his demand, which has become res judicata in one state, must be recognized as such in every other." (Italics supplied.)

On the basis of the foregoing authorities, I feel that Minnesota is not committed to the rule set forth in Restatement, Conflict of Laws, § 400, but has consistently followed the doctrine outlined above, under which relators should be entitled to the protection and benefits of the Minnesota compensation act.