### BERNICE MARRIER v. NATIONAL PAINTING CORPORATION AND ANOTHER.

82 N. W. (2d) 356.

April 12, 1957—No. 36,981.

*Cant, Taylor, Haverstock, Beardsley & Gray* and *Fred Clausen,* for relator.

*Reynolds & McLeod,* for respondents.

Thomas Gallagher, Justice.

Certiorari to review a decision of the Industrial Commission which denied compensation to relator as widow of Chalmer Marrier, deceased employee. The commission's determination was to the effect that it had no jurisdiction herein because (1) the contract of employment had been consummated in Missouri; (2) the employer, National Painting Corporation, had no situs in Minnesota and its business was not localized here; and (3) employee's death for which compensation was sought occurred in Indiana.

The facts are as follows: The home office of the employer corporation is Kansas City, Missouri, where it keeps its books, makes out

its payroll, and from which it mails its paychecks to its various employees. Its work consists principally of painting, repairing, renovating, and waterproofing grain elevators and flour and feed mills in a number of states including Minnesota, Iowa, Oklahoma, Florida, and Indiana. Its president testified that its business was localized in several states. It has performed numerous contracts in Minnesota during 1950, 1951, 1952, and 1953.

In Minneapolis in July 1951, through its president, the employer hired the employee to perform services as a painter on an hourly basis on the employer's Minnesota contracts. At that time and at all times thereafter up to the date of his death, the employee was a resident of Minneapolis. In connection with his employment, from time to time he was instructed to leave Minnesota and to travel to other states to perform services for his employer in connection with the latter's contracts in such states. On such trips the employer always paid his transportation expenses to the place of such employment and, upon completion of the work, for his return trip to Minneapolis. While on one such assignment in Iowa, the employee was promoted to foreman. Thereafter he was in charge of various contracts of the employer in Minnesota, and in such capacity was required to employ men here to aid in the performance of such work. From 1951 up to the date of his death, by far the greatest portion of his work on behalf of employer was performed in Minnesota.

Harold Fenberg, president of the employer corporation since 1952, was in continuous personal contact with the employee throughout his employment. He visited the jobs on which the employee was engaged in Minnesota at least once a week. He testified that, from April 1952 until the first week of January 1953, the employee had worked for the employer in Minneapolis continuously; that at that time the weather became too cold for outside work in Minnesota, and the employee had been instructed to leave Minneapolis for Indiana Harbor, Indiana, to work on a contract of the employer there; that thereupon the employee had left for the Indiana job and on January 24, 1953, had died there as the result of an accident which arose out of and in the course of his employment.

Fenberg testified further that he conducted all Minnesota business of the employer in person here; that he procured all Minnesota contracts through personal solicitation of prospects here; that the employer did not need a Minnesota office, principally because he was here calling on prospects on an almost continuous basis; that to accommodate its customers the employer maintained a listing of its Kansas City telephone number in the Minneapolis telephone directory; and that when the employer obtained a contract for work in Minnesota all workmen required therein were hired at the job site by the employee here as its foreman.

Subsequent to the employee's death, petitioner filed a claim for compensation with the Missouri Industrial Commission. This was denied on the ground that (1) the contract of employment had not been entered into in Missouri; (2) the accident had not occurred there; and (3) there was nothing in the employment contract which placed the employee under the Missouri act. See, Johnson v. Great Lakes Pipe Line Co. 358 Mo. 445, 215 S. W. (2d) 460. The employer carried no workmen's compensation insurance covering its activities in Indiana.

■ The evidence clearly establishes that the contract under which the employee was hired by the employer was made in Minnesota. It is not disputed that he was first employed in Minneapolis by the employer's president in July 1951; that thereafter, as each succeeding job was assigned to him, either the original contract or a subsequent contract made here covered the terms of the employer-employee relationship. Up to the date that he was instructed to leave Minneapolis in January 1953, he had been working in Minnesota continuously for approximately nine months. He was then instructed to leave for the Indiana work, so that even the final contract of hiring, which was in effect at the time of his death, if it be regarded as separate from the original agreement, was made here. The fact that the employer maintained its home office in Missouri and that the paychecks were mailed therefrom is not of controlling force on this issue. DeRosier v. Jay W. Craig Co. 217 Minn. 296, 14 N. W. (2d)

286; Aleckson v. Kennedy Motor Sales Co. 238 Minn. 110, 55 N. W. (2d) 696.

■ Regardless of the place of contract, however, it would seem that under Restatement, Conflict of Laws, § 398, as construed by this court, the Minnesota commission and courts have jurisdiction to apply the Minnesota Workmen's Compensation Act herein. As indicated in Restatement, Conflict of Laws, Minn. Ann. p. 94, the Minnesota Workmen's Compensation Act may be applied where the evidence establishes that an employer's business was localized in Minnesota even though the contract of employment was not made here and even though the injuries occurred outside the state. Aleckson v. Kennedy Motor Sales Co. *supra;* State ex rel. Chambers v. District Court, 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347; Krekelberg v. M. A. Floyd Co. 166 Minn. 149, 207 N. W. 193; Bradtmiller v. Liquid Carbonic Co. 173 Minn. 481, 217 N. W. 680; Brameld v. Albert Dickinson Co. 186 Minn. 89, 242 N. W. 465.

■ Here the evidence clearly establishes that the employer's business was localized in Minnesota. The testimony of its president that its business was localized in several states (presumably including Minnesota where a great proportion of its work was performed); that he was continuously here soliciting Minnesota contracts for the employer; that such contracts when procured were made and executed by the employer here; that it maintained a telephone number in the Minneapolis directory where customers might contact it at its Kansas City office; that all of its employee contracts for services to be performed in Minnesota including that with the employee were made here (see, Aleckson v. Kennedy Motor Sales Co. 238 Minn. 110, 55 N. W. [2d] 696); and that he was in constant and continuous supervision of such contracts here compels the conclusion that the employer's business was localized here. Such evidence is far stronger than that presented in Rice v. Keystone View Co. 210 Minn. 227, 297 N. W. 841, where the employment of a Minnesota broker to further the employer's business in three Minnesota counties, as well as parts of North Dakota and Iowa and all of South Dakota, who maintained no office here and who represented another company at the same

time, was held sufficient to establish localization of the employer's business here. Under the authorities cited, it is clear that the Industrial Commission has jurisdiction to apply the terms of the Minnesota Workmen's Compensation Act herein.

Reversed and remanded with instructions to reinstate the award made by the referee. The relator is allowed $250 attorney's fees in this court.

Reversed and remanded.