JOHN H. HUBBARD v. MIDLAND CONSTRUCTORS, INC., AND ANOTHER.

131 N. W. (2d) 209.

November 6, 1964—No. 39,282.

*Lasley & Foster,* for relators.
*Daniel F. Foley* and *James E. Zeug,* for respondent.

OTIS, JUSTICE.

Relators, Midland Constructors, Inc., and Zurich American Insurance Company, as employer and insurer respectively, seek review of an order of the Industrial Commission awarding workmen's compensation to the employee-respondent, John H. Hubbard. Hubbard was totally and permanently disabled while working on an electric transmission line in Marion, South Dakota. At the time of the accident he was a Minnesota resident employed by an Illinois corporation whose business was localized in Dodge Center, Minnesota.

The only issue is whether the employer's business was also localized in South Dakota, and, if so, whether the services being performed by the employee were referable to the Minnesota or to the South Dakota business. The employee has been receiving compensation under the South Dakota law, but benefits under that statute are not as generous as those conferred by Minnesota.[1]

---

[1]No claim is made that Minnesota must give full faith and credit to the South Dakota compensation law. This problem has been fully considered in Magnolia Petroleum Co. v. Hunt, 320 U. S. 430, 64 S. Ct. 208, 88 L. ed. 149, 150 A. L. R. 413; Cook v. Minneapolis Bridge Const. Co. 231 Minn. 433, 43 N. W. (2d) 792; Sorenson v. Standard Const. Co. Inc. 238 Minn. 68, 55 N. W. (2d) 630. See, also, Annotation, 169 A. L. R. 1185. The United States Supreme Court has held that in the light of the rule that workmen's compensation laws shall be liberally construed, unless there is a final award in the state where benefits are being paid, and it is the judicial or legislative policy of that state—expressed in unmistakable language—that such payments are exclusive, benefits so paid need not be accorded full faith and credit by the courts of another state where additional compensation is sought. Industrial Comm. of Wisconsin v. McCartin, 330 U. S. 622, 67 S. Ct. 886, 91 L. ed. 1140, 169 A. L. R. 1179; Carroll v. Lanza, 349 U. S. 408, 75 S. Ct. 804, 99 L. ed. 1183. There appears to be nothing in the language of the South Dakota statutes enunciating a policy which makes payments under its act exclusive, nor is there any evidence that South Dakota benefits are being paid pursuant to a final adjudication. South Dakota Code 1939, §§ 64.0103, 64.0105, 64.0106; South Dakota Code 1939, 1960 Supp., § 64.0113. In any event, benefits paid under the South Dakota act are deductible from any award made by the Minnesota Industrial Commission. See, also, Wellen, *Workmen's Compensation, Conflict of Laws and the Constitution*, 55 W. Va. L. Rev.

The Industrial Commission affirmed the referee's finding that the work in which the employee was engaged at the time of the accident was referable to the employer's Minnesota business. The reason for the commission's decision was set forth in an accompanying memorandum as follows:

"* * * The work at Marion was for Northern States Power Co., a Minnesota corporation. The testimony shows contract negotiations were carried on with the Dodge Center office. And although there was, of course, a foreman of the employer at Marion, the administrative and supervisory functions remained at Dodge Center. Equipment and men were assigned via Dodge Center."

The question is whether the commission's finding is sustained by the evidence.

In July 1961 Hubbard resided in Wabasha, Minnesota, with his wife and three dependent children. While employed at Savage, Minnesota, he was approached by a representative of Midland and assured of employment in South Dakota on a distribution line. Accordingly, he reported to the company at Sioux Falls and commenced work July 6, 1961, remaining there until October 30, 1961, when he was transferred to the Marion project. The accident in question occurred at Marion on November 13, 1961. During this entire period Hubbard retained his residence in Wabasha, Minnesota, and commuted weekends to visit his family.

Midland has its company headquarters in Chicago, Illinois, with area offices in Missouri and Minnesota. While it has been engaged in business here for over 10 years, it did not establish a permanent area office and warehouse in Dodge Center until 1956. At the time of the accident that office was manned by two vice presidents and acted as headquarters for Wisconsin, Iowa, North Dakota, South Dakota, and Minnesota. The officers in charge made their permanent homes in Dodge Center, and business was solicited and general supervision of on-going projects emanated from there.

---

131; Langschmidt, Jr., *Choice of Law in Workmen's Compensation*, 24 Tenn. L. Rev. 322.

With respect to the particular work being done in Marion, South Dakota, it appears that a cost-plus contract with Northern States Power Company, a Minnesota corporation, was both negotiated and executed at the Dodge Center headquarters. Employees for the Sioux Falls and Marion projects were secured through Minnesota unions located in Minneapolis and in Austin. All of the payrolls were made up and checks issued from Dodge Center, drawn on a Minneapolis bank. No comparable facility existed in South Dakota. Both the Sioux Falls and Marion operations were temporary in nature, and whatever facilities were maintained in South Dakota were dismantled and removed upon the completion of a particular project. It is true that the job supervisor had considerable autonomy, more particularly with respect to the Marion project because of the power company's close supervision and inspection, occasioned by the fact the contract was a cost-plus agreement rather than for a specified sum. The local job supervisor hired and fired employees and secured and repaired equipment without clearing through the Dodge Center office. While basic authority for everything that was done on the site originated in Dodge Center, there was virtually no detailed supervision by that office. One of the vice presidents visited the projects from time to time, primarily as a public relations gesture to assure the other contracting party of Midland's interest and concern for the progress of the work.

The United States Supreme Court has dealt with a series of cases involving similar problems in conflicts of laws. That court has stated in Bradford Elec. Light Co. v. Clapper, 286 U. S. 145, 159, 52 S. Ct. 571, 575, 76 L. ed. 1026, 1035, 82 A. L. R. 696, 705:

"* * * For the purpose of that Act, as of the workmen's compensation laws of most other States, is to provide, in respect to persons residing and businesses located in the State, not only for employees a remedy which is both expeditious and independent of proof of fault, but also for employers a liability which is limited and determinate."

In Bradford Electric it noted that a consideration favoring the application of the law of residence is the relatively casual interest which the

forum of the injury has where an employee is not continuously employed there and has no dependents in that state.

It has been suggested that in some instances an employee may be denied a practical remedy if he must return to the state in which he was injured and the witnesses who were temporarily employed there are no longer available. This possibility, together with the danger of his becoming a public charge, has been described as a matter of grave concern to the state of the employee's residence.[2] Threaded through all of these cases is the expressed policy of protecting employees who have substantial business connections and personal ties within the jurisdiction where compensation is sought.[3]

Turning to our own decisions, we find no occasion to deviate from the rule we adopted over 45 years ago in State ex rel. Chambers v. District Court, 139 Minn. 205, 209, 166 N. W. 185, 187, 3 A. L. R. 1347,[4] where we said:

"A basic thought underlying the compensation act is that the business or industry shall in the first instance pay for accidental injuries as a business expense or a part of the cost of production. It may absorb it or it may put it partly or wholly on the consumer if it can. The economic tendency is to push it along just as it is to shift the burden of unrestrained personal injury litigation. When a business

---

[2] Alaska Packers Assn. v. Industrial Acc. Comm. 294 U. S. 532, 55 S. Ct. 518, 79 L. ed. 1044.

[3] Cardillo v. Liberty Mutual Ins. Co. 330 U. S. 469, 67 S. Ct. 801, 91 L. ed. 1028. See, also, Pacific Employers Ins. Co. v. Industrial Acc. Comm. 306 U. S. 493, 59 S. Ct. 629, 83 L. ed. 940.

[4] See, also, Rice v. Keystone View Co. 210 Minn. 227, 297 N. W. 841; Fitzgerald v. Economic Laboratory, Inc. 216 Minn. 296, 12 N. W. (2d) 621; Marrier v. National Painting Corp. 249 Minn. 382, 82 N. W. (2d) 356. In Marrier we applied the Minnesota Workmen's Compensation Act to a claim arising out of the death of an employee in Indiana where neither Indiana nor Missouri, the employer's state of residence, took jurisdiction. Although we found the business to be localized in Minnesota, we did not deal with the question of whether the Indiana work was referable to this state. Whatever may have been the reason for this omission, it should not be construed as dispensing with the necessity for both localization and referability.

is localized in a state there is nothing inconsistent with the principle of the compensation act in requiring the employer to compensate for injuries in a service incident to its conduct sustained beyond the borders of the state. The question of policy is with the legislature. It may enact an elective compensation act bringing such result if it chooses. In the case before us the business of the employer was localized in the state. What the employee did, if done in Minnesota, was a contribution to the business involving an expense and presumably resulting in a profit. It was not different because done across the border in North Dakota. It was referable to the business centralized in Minnesota."

We are satisfied the record amply supports the commission's decision that the services rendered by Hubbard in Marion, South Dakota, were referable to the employer's localized business in Dodge Center, Minnesota. We have difficulty finding that an isolated project of a temporary nature and brief duration is a localized business where there are no permanent officers, employees, offices, warehouses, advertising program, or resident representatives. Nevertheless, it is the position of the relators that they are entitled to judgment by virtue of our holding in DeRosier v. Jay W. Craig Co. 217 Minn. 296, 14 N. W. (2d) 286. There we affirmed a decision of the Industrial Commission denying compensation to a Minnesota resident injured in the construction of an airport at Pierre, South Dakota. We held that the project constituted a business localized in South Dakota and not in Minnesota. However, the rule in the Restatement, Conflict of Laws, § 400, on which we relied in DeRosier,[5] was thereafter rejected by

---

[5]Subsequent to DeRosier the Restatement was modified to read as follows (Restatement, 1948 Supp., Conflict of Laws, § 400):

"*No recovery can be had under the Workmen's Compensation Act of a state if neither the harm occurred nor the contract of employment was made in the state unless the Act confers in specific words, or is interpreted to confer, a right of action because of the extent of the activities of the employer or employe within the state.*

"*Comment*:

"a. The right of recovery because of the employment relation must be based upon an applicable statute. Normally, Workmen's Compensation

us in Aleckson v. Kennedy Motor Sales Co. 238 Minn. 110, 55 N. W. (2d) 696. We now hold that to the extent our conclusions are inconsistent with the DeRosier decision, it is overruled.

Respondent is allowed $250 attorneys' fees.

Affirmed.

Acts do not purport to apply if neither the harm occurred nor the contract of employment was made in the state. The interest of the state, however, in the employer-employee relationship or in the regulation of local enterprises, is sufficient to empower the state to allow recovery, even though the contract of employment and the injury took place outside the state." (Italics supplied.)