## HENRY HOULE v. STEARNS-ROGERS MANUFACTURING COMPANY AND ANOTHER.

157 N. W. (2d) 362.

March 1, 1968—No. 40,683.

*McLeod & Gilmore,* for relators.

*Newton S. Friedman,* for respondent.

MURPHY, JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding workmen's compensation to a Minnesota workman for injuries he sustained in the State of South Dakota while employed there pursuant to a contract with a Colorado employer. The issue presented is whether, under the facts herein related, there was a sufficient governmental interest in the employment status to warrant the Minnesota Industrial Commission in taking jurisdiction to determine compensability of the injuries sustained in South Dakota.

From the record it appears that the employer, Stearns-Rogers Manufacturing Company, is one of about 75 contractors engaged in various phases of construction of the Missouri River Basin conservation project. The project involves work in various states. The employee, Henry Houle, was hired as a welder in March 1960 to work on part of the project at Rapid City, South Dakota. Houle and another workman, who later became a foreman on the job, were hired in Minnesota through the union office in Minneapolis. They were immediately put on the payroll of the employer at the time they started travel from their homes in Minnesota to the location of their work in South Dakota. Houle's base pay was $150 a week. In addition to pay during travel time, he was paid expenses and a subsistence allowance of $21 a week. He worked in South Dakota from March 1960 until July 22, 1960, a few weeks after the accident in which he was injured. His employment was interrupted when he returned to Minnesota because of the illness and death of his daughter. For this trip, travel expense was paid both ways by the employer. During all of the period in question, the employee maintained his residence in Minnesota. After he was injured in July 1960, Houle was paid $4,877 in a South Dakota compensation proceeding and entered into an agreement releasing the company from all claims arising under the laws of South Dakota or any other state. It appears that Houle thereafter required additional medical attention, bringing the total of his expenses to over $4,000 by March 1965. He therefore sought further relief under the workmen's compensation laws of Minnesota. The Industrial Com-

mission accepted jurisdiction of the matter and awarded additional compensation in accordance with the provisions of Minnesota law.

It is contended that the commission was without jurisdiction to grant additional workmen's compensation benefits because benefits had already been paid under the laws of South Dakota and that the release signed by the workman is a complete bar to further benefits in Minnesota. We held in Cook v. Minneapolis Bridge Const. Co. 231 Minn. 433, 43 N. W. (2d) 792, that where a resident of Minnesota, employed under a Minnesota contract of employment by an employer with its principal place of business in this state, was injured while at work in North Dakota and was awarded compensation under the Workmen's Compensation Act of North Dakota, he had the right to seek recovery under the more liberal provisions of the Minnesota Workmen's Compensation Act, with full credit being given for all payments received in the North Dakota proceeding.

There is ample authority for the Minnesota commission to assume jurisdiction of injuries sustained by an employee while engaged in work for an employer in a foreign state when the employer's business is localized in this state. State ex rel. Chambers v. District Court, 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347; Hubbard v. Midland Constructors, Inc. 269 Minn. 425, 131 N. W. (2d) 209; Rice v. Keystone View Co. 210 Minn. 227, 297 N. W. 841; Aleckson v. Kennedy Motor Sales Co. 238 Minn. 110, 55 N. W. (2d) 696; Fitzgerald v. Economic Laboratory, Inc. 216 Minn. 296, 12 N. W. (2d) 621; Marrier v. National Painting Corp. 249 Minn. 382, 82 N. W. (2d) 356; Industrial Comm. v. McCartin, 330 U. S. 622, 67 S. Ct. 886, 91 L. ed. 1140, 169 A. L. R. 1179.

It is not seriously contended by respondent that the incidents of the employer's activities in Minnesota are sufficient to warrant taking jurisdiction under the theory of localization discussed in the foregoing authorities. We believe, however, that respondent is correct in his position that jurisdiction may be asserted here on the sole ground that the contract of employment was entered into in the State of Minnesota. He argues that, as a resident of Minnesota under a Minnesota contract for hire, he was covered by the Minnesota Workmen's

Compensation Act. This argument derives from the basic policy of the Workmen's Compensation Act which comprehends that rights to compensation are contractual and, in the event of injury, the rights of the employee are to be determined by the law of the place where the parties entered into the employment. State ex rel. Chambers v. District Court, *supra;* Wellen, *Workmen's Compensation, Conflict of Laws and the Constitution,* 55 W. Va. L. Rev. 131; Langschmidt, Jr., *Choice of Law in Workmen's Compensation,* 24 Tenn. L. Rev. 322, 325. It is reasoned that, since compensation is a part of the contract of employment, the employee is governed and protected by that provision of the contract whether it is performed within the state, in whole or in part, or actually beyond the boundaries of the state. Numerous authorities recognize that an injured employee may secure workmen's compensation benefits in one of several forums, including the state in which the injury occurred, the state where the employment relation existed by reason of localization of the employer's business, and the state where the contract was made, since any of these states has a sufficient interest in the work injury to justify application of its own law.[1]

Respondent's position is supported by the United States Supreme Court's decision of Alaska Packers Assn. v. Industrial Acc. Comm. 294 U. S. 532, 55 S. Ct. 518, 79 L. ed. 1044, which holds that the place of making the contract may be the proper forum for adjudication of compensability. In the Alaska Packers case, a contract of employment was made in California for work to be done in Alaska. The employee agreed to work for the employer during the summer canning season. At the end of the season, the employee returned to California and applied for and was granted workmen's compensation benefits for injuries sustained in his employment in Alaska, even though the parties had expressly stipulated in the contract of employment to be bound by the workmen's compensation law of Alaska.

---

[1] Wilson v. Faull, 27 N. J. 105, 141 A. (2d) 768; 2 Larson, Workmen's Compensation Law, § 86.10; Restatement, Conflict of Laws, §§ 400, 403; 55 W. Va. L. Rev. 131; 24 Tenn. L. Rev. 325; Horovitz, Injury and Death under Workmen's Compensation Laws, pp. 34 to 38 and note 9, p. 36.

The award was made in conformity with the statutes of California where the contract of employment was entered into rather than the laws of the place where the injury occurred. The United States Supreme Court there pointed out that the fact that the contract is to be performed elsewhere does not of itself deprive the state of its legislative control. The court said (294 U. S. 541, 55 S. Ct. 521, 79 L. ed. 1049):

"* * * 'The contract creates a relationship under the sanction of the law and the same law attaches as an incident thereto an obligation to compensate for injuries sustained abroad amounting to a sort of compulsory insurance.' [Citation omitted.] Obviously the power of a state to effect legal consequences is not limited to occurrences within the state if it has control over the status which gives rise to those consequences."

The court emphasized the disadvantages to which such an employee would necessarily be subjected were he required to retrace his steps to the jurisdiction of the accident in order to successfully prosecute his claim for compensation and concluded that California had a legitimate public interest in controlling and regulating the employer-employee relationship under such circumstances. This consideration was adverted to by this court in Hubbard v. Midland Constructors, Inc. 269 Minn. 425, 429, 131 N. W. (2d) 209, 212, where we said:

"It has been suggested that in some instances an employee may be denied a practical remedy if he must return to the state in which he was injured and the witnesses who were temporarily employed there are no longer available. This possibility, together with the danger of his becoming a public charge, has been described as a matter of grave concern to the state of the employee's residence. Threaded through all of these cases is the expressed policy of protecting employees who have substantial business connections and personal ties within the jurisdiction where compensation is sought."

It would accordingly appear that one state may have a sufficient legitimate governmental interest in a single work injury to sanction adjudication of compensability under local law without violation of

due process and that the full faith and credit clause has sufficient flexibility to permit any state possessing such jurisdiction to apply its own law in its own forum in total disregard of any other.

■    The question arises as to whether, in a particular case, a state might have a "sufficient legitimate governmental interest" to warrant the exercise of jurisdiction on the basis of contract status alone. We have no statutory provisions or precedents in this state which might serve as a guide. Some states have express statutory provisions relating to the extraterritorial application of their workmen's compensation acts. New Mexico has a statute providing that an employee assigned work outside the state is entitled to compensation under the New Mexico act where the injuries have been received within a specified time after leaving the state and the assignment was not permanent. Franklin v. Livermore, 58 N. Mex. 349, 270 P. (2d) 983. Florida also has a statute providing when a workman injured in another state may receive compensation under the Florida act. Miller Contracting Co. of Ohio v. Hutto (Florida) 156 So. (2d) 745. It should be observed that the indiscriminate or arbitrary exercise of jurisdiction by the state where the contract is made would, in many cases, carry compensation acts far beyond the sphere in which the state has a legitimate governmental interest to conserve in applying them. Accordingly, each case must stand on its own facts.

On the basis of the record in this case, we are of the view that the State of Minnesota has a sufficient legitimate governmental interest to entertain jurisdiction. We cannot agree that South Dakota is the exclusive forum for adjudicating the claim merely because the accident happened there. The transitory nature of the employment must be considered. Neither the employer nor the employee were residents of South Dakota. The State of South Dakota had no more interest in the employment project than any one of a number of states. The employer had its place of business in Colorado and was engaged in an interstate project. The employee was temporarily stationed in South Dakota while being paid subsistence pay by the employer and travel expenses to and from his home as well. Moreover, the employer had certain contacts within the State of Minnesota at the time

the employment agreement arose. Although the employer had engaged in construction work in Minnesota, no such work was in progress at the time of the transactions here involved. The employer did, however, maintain an agent in Minnesota for the purpose of service and had qualified under the provisions of the Workmen's Compensation Act. We accordingly conclude that, in light of the employer-employee status in this case, the state had a sufficient legitimate governmental interest to warrant application of our laws for the injuries sustained by the workman in South Dakota.

■ It is next urged by relators that the contract was not in fact entered into in Minnesota. In considering this point, it should be noted that the contractual rights of the parties derive from an agreement between the employee's union, the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, and more than 75 contractors engaged within the States of Montana, Kansas, Missouri, Minnesota, Nebraska, Colorado, South Dakota, Wisconsin, Wyoming, North Dakota, and Iowa in various phases of construction of the so-called Missouri River Basin. Article 2 of this contract states:

"The employer recognizes the Union as the sole and exclusive bargaining representative for all boilermakers journeymen, apprentices and helpers in the employ of the Employer with respect to wages, hours and other terms and conditions of employment herein expressed in the performance of all work coming within the terms of this Agreement subject to the provisions of existing law."

Article 4(a) states the agreement covers the working rules and conditions of employment for all journeymen boilermakers. Appendix "D" refers to the technique of referral of men. Section 1 ("EXCLUSIVE REFERRAL") states:

"(a). The Employer shall, under the terms of this Appendix, request the Union to furnish all competent and qualified field construction boilermakers, boilermakers helpers and boilermakers apprentices. The Employer in requesting the Union to furnish such applicants, shall notify the Union either in writing or by telephone, stating the

location, starting time, approximate duration of the job, the type of work to be performed and the number of workmen required."

Sections 2 and 3 set up the necessary registration and qualifications for the boilermakers. Section 4 states:

"Upon the request of the Employer for foreman, assistant foremen, boilermakers, boilermaker helpers or boilermaker apprentices, the Union shall immediately refer competent and qualified registrants to the Employer in sufficient number required, in the manner and under the conditions set forth in this Appendix, from the appropriate out-of-work list, on a first in, first out basis, that is, the first name registered shall be the first name referred, * * *."

Section 5 provides for nondiscriminatory referral but 5(b) does provide:

"The Employer retains the right to reject any job applicant referred by the Union."

Article 5(b) also contains a similar provision:

"* * * The Employer shall have the right to reject any applicant for employment who is unable to thus establish his qualifications and skill necessary to perform the work required by the Employer or for any other bona fide reason."

Since the contract appears to give the employer the right to reject any applicant for employment, it is argued that the last act in the contract of hire occurred in South Dakota, and it consequently must be construed as having been entered into where that act took place. It should be noted that the employer utilized the union as an agent to convey the employer's offer of work to individuals in designated order. In this case, one of the employer's supervisors in South Dakota contacted the union office in Minneapolis and had the offer of employment communicated to the employee. The terms of employment were known to the employee since the governing conditions of employment were expressed in the union contract. The commission concluded that, since the employee was immediately placed on the payroll and paid time and travel expenses, the offer and acceptance of em-

ployment both occurred in the State of Minnesota. Although the contract speaks of the right of the employer to reject an employee, it does not provide when that right shall be exercised. The fact that the employee was on the payroll when he left Minnesota would indicate that the right of the employer thereafter would be to discharge the employee rather than reject his services. McClintock, *Conflict of Laws as to Contracts,* 13 Minn. L. Rev. 538.

The point thus raised by relators has been considered in two recent cases—Reynolds Elec. & Eng. Co. v. Workmen's Comp. App. Bd. 65 Cal. (2d) 429, 55 Cal. Rptr. 248, 421 P. (2d) 96, and Mattel v. Pittman Const. Co. 248 La. 540, 180 So. (2d) 696. The California court examined a similar contract and observed that it was governed by the same rules applicable to other types of contracts, including the requirements of offer and acceptance, and that "[a]n employee who is hired pursuant to a collective bargaining agreement between a labor union and an employer is deemed to be a third party beneficiary, with a relationship to the employer the same as if the contract had been made directly with him." 65 Cal. (2d) 433, 55 Cal. Rptr. 251, 421 P. (2d) 99. The court noted that, although the agreement did provide that the employer might reject a worker referred by the union, the employer was required under the terms of the contract to pay wages and subsistence. It concluded that the commission was "justified in concluding that the possibility an employer will reject the worker for cause when he arrives at the jobsite does not prevent a contract of hire from coming into existence at the time of the worker's departure for the job." 65 Cal. (2d) 436, 55 Cal. Rptr. 253, 421 P. (2d) 101. The Louisiana court, in the Mattel case, held, under similar circumstances, that where the job offer made to an employee through a union for work in Mississippi was accepted in Louisiana, the employment contract was one in which Louisiana had an interest and its courts had jurisdiction to apply the Louisiana compensation statute. See, also, Filson v. Bell Telephone Laboratories, Inc. 82 N. J. Super. 185, 197 A. (2d) 196.

■    Relators' contention that the employee is barred from asserting rights in Minnesota because of the release given in the South Dakota

proceedings may be disposed of by observing that Minn. St. 176.021, subd. 4, makes void any agreement to accept less than that to which the employee is entitled under our Minnesota compensation law. Respondent is allowed $250 attorney's fees in this court.

Affirmed.

OTIS, JUSTICE (dissenting).

In holding that to confer jurisdiction for purposes of awarding workmen's compensation it is now only necessary to show that -a contract of employment was entered in this state with a Minnesota resident, we are overruling 50 years of precedent sub silentio. The court has abandoned the requirement that an employer have a localized business in Minnesota as a prerequisite to imposing liability under the Workmen's Compensation Act. Predictably, the next step will be to apply the Minnesota act regardless of where a Minnesota resident is hired or injured. While this may be constitutionally valid, in the absence of legislation which clearly expresses a purpose to extend the act that far, I cannot agree we should summarily reverse a position to which we have adhered without deviation since 1918. If a majority of the court is of a different opinion, it seems to me that we should expressly overrule our prior decisions.

Where, as here, it is conceded that the employer had no business localized in Minnesota, I fail to see how he has an obligation to submit to our act. Apparently, because of prior activity in this state, this employer did in fact carry workmen's compensation insurance. Ordinarily, however, this will not be the case where the employer has no connection with this state beyond hiring Minnesota residents for work elsewhere. The burden thus imposed is out of proportion to any reciprocal benefit which this state confers on the employer.

Moreover, there may well be a great many other employers similarly situated outside of this state who, relying on our localization rule, have heretofore failed to secure compensation insurance. As to them our retroactive reversal of policy is manifestly unjust.

By the same token, we certainly do not encourage nonresident employers to seek Minnesota construction workers out of local hiring

halls if they are saddled with the substantial expense of carrying compensation insurance as the price for giving jobs to Minnesota residents. As a result, our decision will inevitably tend to dry up this source of out-of-state employment.

In State ex rel. Chambers v. District Court, 139 Minn. 205, 166 N. W. 185, we first promulgated the rule that an employer may be liable under the act for injuries sustained by an employee outside of this jurisdiction if the employer's business was localized in Minnesota. There we stated (139 Minn. 209, 166 N. W. 187):

"* * * When a business is localized in a state there is nothing inconsistent with the principle of the compensation act in requiring the employer to compensate for injuries in a service incident to its conduct sustained beyond the borders of the state. The question of policy is with the legislature. It may enact an elective compensation act bringing such result if it chooses. In the case before us the business of the employer was localized in the state. What the employee did, if done in Minnesota, was a contribution to the business involving an expense and presumably resulting in a profit. It was not different because done across the border in North Dakota. It was referable to the business centralized in Minnesota."

Every case dealing with the subject since the Chambers decision has found the employer's business to be localized in this state as a basis for recovery. State ex rel. Maryland Cas. Co. v. District Court, 140 Minn. 427, 428, 168 N. W. 177, 178; Stansberry v. Monitor Stove Co. 150 Minn. 1, 2, 183 N. W. 977, 20 A. L. R. 316; Ginsburg v. Byers, 171 Minn. 366, 214 N. W. 55; Bradtmiller v. Liquid Carbonic Co. 173 Minn. 481, 217 N. W. 680; Rice v. Keystone View Co. 210 Minn. 227, 231, 297 N. W. 841, 843; Fitzgerald v. Economic Laboratory, Inc. 216 Minn. 296, 298, 12 N. W. (2d) 621, 623; Aleckson v. Kennedy Motor Sales Co. 238 Minn. 110, 117, 55 N. W. (2d) 696, 701; Marrier v. National Painting Corp. 249 Minn. 382, 386, 82 N. W. (2d) 356, 358.

As recently as November 1964, we noted in Hubbard v. Midland Constructors, Inc. 269 Minn. 425, 429, footnote 4, 131 N. W. (2d)

209, 213, that our decision in the Marrier case "should not be construed as dispensing with the necessity for both localization and referability." A number of authorities have recognized our position in the matter. Langschmidt, Jr., *Choice of Law in Workmen's Compensation*, 24 Tenn. L. Rev. 322, 327, states:

"* * * The Minnesota court has developed the 'business localization' theory as a test for applicability of the Minnesota Act."

Wellen, *Workmen's Compensation, Conflict of Laws and the Constitution*, 55 W. Va. L. Rev. 131, 134, notes:

"* * * [T]he courts in several states, even in the absence of statutory provisions, have developed conflict of laws principles more adapted to workmen's compensation problems. The common factor in these theories is the attempt to find some act, relation, or situation within the jurisdiction to which the local act will attach legal consequences. Probably the best known of these theories has been the 'business localization test' developed by the Minnesota court. * * *

\* \* \* \* \*

*"In an increasing number of states, the business localization theory is being regarded as an important factor in determining whether the local act will be applied."* (Italics supplied.)

Professor McClintock made a similar observation in Restatement, Conflict of Laws, Minn. Ann. p. 94. Finally, 2 Larson, Workmen's Compensation Law, § 87.50, comes to the following conclusion:

"The state in which the employer's business is localized has a relevant interest in a compensable injury, as shown in the constitutional discussion earlier, since the obligation side of the compensation relation is as much a part of that relation as the benefit side, and since the burden of payment would ordinarily fall most directly on the employer and community where the industry is centered. Minnesota is the only state, however, in which this test [localization] has been fully developed by judicial decision, as the most important test of all, although other jurisdictions have relied upon it in conjunction with other tests. In Minnesota, the decisions seem to indicate that

the local statute will be applied on the strength of business localization even if the injury and other major factors are outside the state; and, conversely, *the presence of such other major factors as employee residence and place of contract within the state does not seem to satisfy the courts unless they can also find some kind of business localization in . Minnesota."* (Italics supplied.)

While Alaska Packers Assn. v. Industrial Acc. Comm. 294 U. S. 532, 55 S. Ct. 518, 79 L. ed. 1044, relied on by the majority, dealt with the propriety of applying the law of an injured employee's residence rather than the law of the state where he was injured, that case is not authority for the proposition that the residence of the employer has no relevance. It seems apparent from a reading of the opinion of the California Supreme Court, 1 Cal. (2d) 250, 34 P. (2d) 716, that the employer was a California company with a business localized in that state. The United States Supreme Court merely held that there were no constitutional impediments to applying California law although the accident occurred in Alaska, noting in its opinion that without a remedy in California the injured employee would be "remediless." 294 U. S. 542, 55 S. Ct. 521, 79 L. ed. 1049.

For the reasons stated I would not lightly abolish the requirement of an employer's business localization in this state without stating more compelling reasons for our deviating from the doctrine of stare decisis.

PETERSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Otis.