## DUANE HAGBERG v.
## COLONIAL & PACIFIC FRIGIDWAYS, INC.

157 N. W. (2d) 33.

March 8, 1968—Nos. 40,675, 40,739.

*Gislason, Reim, Alsop & Dosland,* for appellant.
*Mott, Grose, Von Holtum & Hefferan,* for respondent.

SHERAN, JUSTICE.

Appeal from a judgment of the district court.

Duane Hagberg commenced this action against Colonial & Pacific Frigidways, Inc., a Delaware corporation, by process served pur-

suant to Minn. St. 303.13, subd. 1(3). The theory of his suit is that he is entitled to recover damages as allowed by § 176.031 for injuries sustained as the result of an employment-related accident occurring in the State of Montana on June 8, 1963, because (a) he is entitled to receive from Colonial the benefits provided by the Minnesota Workmen's Compensation Act under the circumstances of the accident; (b) defendant's liability for this workmen's compensation was neither insured nor self-insured as required by the laws of this state; and (c) the accident was caused by the negligence of plaintiff's fellow employee, whose fault is attributable to defendant as employer.

Plaintiff prevailed in the trial court and defendant, its post-trial motion denied, now contends:

(1) The service of process pursuant to § 303.13, subd. 1(3), was not effectual because the action is for a tort, no part of which occurred in Minnesota.

(2) The Workmen's Compensation Act of Minnesota has no application to an accident occurring in Montana under the circumstances here involved.

(3) There was no relationship of employer and employee.

(4) Negligence attributable to Colonial was not established.

(5) The verdict was excessive.

(6) The trial court omitted essential instructions to the jury pertaining to (a) willful negligence and (b) "clean hands."

The injuries sustained by plaintiff occurred because a truck-tractor owned and leased by him to defendant, but operated by one Bierman while plaintiff was sleeping, and an attached trailer, owned by defendant and used for the transportation of commodities in the furtherance of its business as a common carrier, left a straight, level Montana roadway and overturned at a time when weather and road-surface conditions were normal. Additional facts will be stated in connection with the pertinent issues.

■ The jurisdictional question involves interpretation of Minn. St. 303.13, subd. 1(3), which provides:

"If a foreign corporation makes a contract with a resident of

Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort * * *."

The essential elements of this statute presently relevant are:

(1) A foreign corporation and a resident of Minnesota must have made a contract to be performed in whole or in part in Minnesota.

(2) The action must arise from or grow out of this contract.

There is no dispute about the first element. Defendant was a foreign corporation with its base in Storm Lake, Iowa; plaintiff was a Minnesota resident. They had entered into an employment contract in Iowa to be performed in part in Minnesota. But does this action arise from or grow out of the employment contract?

As noted, the present action is one brought under the provisions of § 176.031 of the Workmen's Compensation Act. It provides in part:

"The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee * * *. If an employer * * * fails to insure or self-insure his liability for compensation to his injured employees * * *, an injured employee * * * may elect to claim compensation under this chapter or to maintain an action in the courts for damages on account of such injury or death. In such action it is not necessary to plead or prove freedom from contributory negligence. The defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee, unless it appears that such negligence was wilful on the

part of the employee. The burden of proof to establish such wilful negligence is upon the defendant." (Italics supplied.)

The rights afforded by our compensation act are incidents of the employment relationship.[1] The specific right to bring an action under this law is derived from that relationship. In this sense, the right of action provided by § 176.031 is one arising from the employment contract.

Defendant argues that the action, to be covered by the statute, must not only arise from the contractual relationship, but must in addition be in the traditional form of a contract action. The cause pleaded here involves negligence and is in the form of a tort claim. But it is not an action for common-law negligence. If it were, such defenses as contributory negligence and assumption of risk would be available to the defendant.[2] It is, instead, a cause of action which exists only because § 176.031 gives it to the employee as a term of his employment.

Defendant cites Marshall Egg Transport Co. v. Bender-Goodman Co. Inc. 275 Minn. 534, 148 N. W. (2d) 161, in support of its position on the jurisdictional question. That case deals with the portion of § 303.13, subd. 1(3), which relates to contracts; but it involves a somewhat different problem than the one now before us. We held there that jurisdiction of a New York corporation could not be acquired by service under Minn. St. 303.13, subd. 1(3), when the action was to recover the purchase price of a quantity of eggs to be paid according to the terms of a contract allegedly made, at a time when the eggs were in the possession of the New York defendant, by a telephone conversation between the parties, the plaintiff being in Marshall, Minnesota, and the defendant in New York City. We held in effect that the contacts of the defendant with this state in that transaction, consisting of the telephone conversation followed by the transmittal of a draft in part payment (payment of which was stopped before negotiation), were too meager to justify

[1] Todeva v. Oliver Iron Min. Co. 232 Minn. 422, 45 N. W. (2d) 782.
[2] 13B Dunnell, Dig. (3 ed.) §§ 7012, 7041a.

the assertion of jurisdiction by this state over the corporate defendant there involved. The principle of the Marshall case does not apply here where defendant had conducted a substantial and continuing business in Minnesota over an extended period of time. For example, from January 1, 1963, until the time of the accident in June, over 28 percent of all shipments made by defendant had an origin or destination in Minnesota. Plaintiff furthered this business in Minnesota. An obligation reciprocal to the privilege of doing business in the state as defendant has done is amenability to suit in this state. Fourth Northwestern Nat. Bank v. Hilson Industries, Inc. 264 Minn. 110, 117 N. W. (2d) 732.

The other cases cited by defendant on the jurisdictional question [3] deal with that portion of § 303.13, subd. 1(3), that is concerned with torts rather than contracts and thus are not applicable.

Under Minn. St. 303.13, in our opinion, the action need only arise out of the contractual relationship and need not in addition be an action in the traditional form of contract. The court therefore properly assumed jurisdiction over defendant in the instant case.

■ The second issue raises the question of whether the relationship between defendant and plaintiff was such as to permit application of our Workmen's Compensation Act.

The trial court found that defendant did a substantial amount of business in Minnesota and held the Minnesota act applicable. The court's determination that defendant's business was localized in Minnesota is adequately supported by the evidence. From January 1, 1963, until the time of the accident in June, defendant company handled 970 loads, 281 of which had their origin or destination in Minnesota. This business in Minnesota was both substantial and continuous. Defendant had a standing order with National Food Stores to deliver 7 or 8 loads per week of fresh fruits and vegetables from the west coast to Hopkins, Minnesota. That defendant may have

---

[3] Atkins v. Jones & Laughlin Steel Corp. 258 Minn. 571, 104 N. W. (2d) 888; Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670; Adamek v. Michigan Door Co. 260 Minn. 54, 108 N. W. (2d) 607; Ehlers v. U. S. Heating & Cooling Mfg. Corp. 267 Minn. 56, 124 N. W. (2d) 824.

conducted a greater share of its business in other states is not controlling. We have stated in a number of cases that a business may be localized in more than one state. Hubbard v. Midland Constructors, Inc. 269 Minn. 425, 131 N. W. (2d) 209; Marrier v. National Painting Corp. 249 Minn. 382, 82 N. W. (2d) 356; Aleckson v. Kennedy Motor Sales Co. 238 Minn. 110, 55 N. W. (2d) 696. If an employer conducts a substantial amount of its business in Minnesota, it is localized in this state and subject to our workmen's compensation laws, at least with respect to resident employees whose duties to a substantial extent consist of implementing the localized business.

It is not determinative that the particular load plaintiff was hauling at the time of the injury was one neither originating in nor destined for Minnesota. On the trip in question a "stop-over" in Minnesota was contemplated. The plaintiff testified that 75 to 80 percent of his deliveries from the west coast were made to Hopkins, Minnesota. There is no question that if plaintiff had been injured while making one of these deliveries, the Minnesota workmen's compensation laws would have been applicable even though the injury occurred in Montana. It was merely fortuitous that the accident happened while plaintiff was hauling a load not destined for Minnesota. In similar cases this court has held the Minnesota workmen's compensation law to be properly applied. In Marrier v. National Painting Corp. *supra,* the employer, whose base was in Kansas City, was localized in a number of states, one of which was Minnesota. The employee had done the greater part of his work in Minnesota, but was injured in Indiana. We held the Minnesota law to be applicable. In Rice v. Keystone View Co. 210 Minn. 227, 297 N. W. 841, the employer's business was localized in Minnesota. The employee was a salesman living in Minnesota. His territory included both Dakotas, part of Iowa, and three counties in Minnesota. The defendant was fatally injured in South Dakota while on his way to Watertown where he was to demonstrate his company's products. We held there that the Minnesota workmen's compensation laws were applicable.

Our decision does not mean that we will subject all interstate carriers who pass through our state to our workmen's compensation

laws regardless of how significant their contacts are. A substantial proportion of defendant's business was conducted in Minnesota, and a substantial proportion of plaintiff's job was to conduct this business for defendant. We do not feel that under such circumstances it is unjust to impose the burdens of workmen's compensation on an employer who has chosen to avail himself of the benefits of doing business in Minnesota. See, Houle v. Stearns-Rogers Mfg. Co. 279 Minn. 345, 157 N. W. (2d) 362.

■ Defendant next contends that the court, to which the issue of the two drivers' relationship to defendant was submitted by stipulation, was in error in finding that the two drivers were defendant's employees. Defendant argues that the only permissible finding was that plaintiff was an independent contractor and the other driver was an employee of plaintiff. To support this view, defendant cites three cases with very similar facts, each presenting the question of whether a deceased trucker was an employee of a defendant which had leased the vehicle. Tretter v. Dart Transit Co. 271 Minn. 131, 135 N. W. (2d) 484; Gibson v. Moore Motor Freight Lines, Inc. 246 Minn. 359, 75 N. W. (2d) 212; Turner v. Schumacher Motor Express, Inc. 230 Minn. 172, 41 N. W. (2d) 182. The relevant facts in those cases pertaining to the issue of whether the decedent was an employee are very similar to those in the present one. However, there is one critical difference, and it is this difference that compels us to reach a different result. In each of these three cases, the trier of fact found the party in question not to be an employee. In the present case, the court as the trier of fact found both drivers to be the employees of defendant.

It is fundamental law that the issue of whether one is an employee is a question of fact. Tretter v. Dart Transit Co. *supra;* Turner v. Schumacher Motor Express, Inc. *supra.* Once there has been a finding by the trier of fact that a person is an employee, the only function this court has is to determine whether this finding may reasonably be supported by the evidence.

We feel that there is sufficient evidence to support this finding. Perhaps the most important factor to consider in determining whether

there is an employment relationship is who has the right to control the details of the work.[4] The lease agreement vests this right in the defendant. Clause 7A of the agreement provides:

"The Lessor agrees to obtain and present, for approval to [Colonial & Pacific, Inc.] two drivers who are familiar with the equipment, available at all times, who shall be under the direct control and supervision of [Colonial & Pacific, Inc.]."

Clause 12 of the agreement provides:

"Lessor agrees that during the period of this lease the motor vehicle equipment shall be under the control of [Colonial & Pacific, Inc.] * * *."

The fact that defendant did not actually exercise control to the full extent to which it had power to do so is not important. Hansen v. Adent, 238 Minn. 540, 57 N. W. (2d) 681; Larson v. Le Mere, 220 Minn. 25, 18 N. W. (2d) 696.

Another factor which supports the finding of an employment relationship was defendant's right to discharge drivers. Clause 12C of the lease agreement provides that defendant can "discharge any Lessor or driver on a moment's notice." In addition, clause 7A requires that all drivers must be approved by defendant.

Because of these factors, we cannot say that as a matter of law the court erred in finding both drivers to be employees of defendant.

■ The next issue raised by defendant is that under the evidence submitted at trial, defendant was free from negligence as a matter of law. We have held that where a motor vehicle leaves the highway with no apparent explanation, a jury may draw the inference that the accident resulted from the negligence of the driver. Tanski v. Jackson, 269 Minn. 304, 130 N. W. (2d) 492; Nicol v. Geitler, 188 Minn. 69, 247 N. W. 8. The issue was properly submitted to the jury and the jury properly found that the accident was caused by the negligence of the driver.

■ Defendant also argues that the verdict awarded by the jury to plaintiff is grossly excessive. The testimony indicates that plaintiff

---

[4] Hansen v. Adent, 238 Minn. 540, 57 N. W. (2d) 681; Larson v. Le Mere, 220 Minn. 25, 18 N. W. (2d) 696.

is permanently disabled from engaging in his occupation as truckdriver due to the accident. This has caused a reduction in his earning capacity of approximately $5,000 per year. Considering this fact and the permanent injury to his back, we cannot say a verdict of $14,500 is excessive.

 The tractor owned by plaintiff contained an undersized sleeping compartment, in violation of the I. C. C. Safety Regulation Code. It is argued by defendant that this violation of a safety regulation was willful negligence and willful assumption of risk. If so, under Minn. St. 176.031 plaintiff is not entitled to recover. Upon examining the evidence we find no connection between the size of the sleeping compartment and plaintiff's injury. We therefore need not reach the question of whether the violation of the I. C. C. safety rule could constitute willful conduct such as would prohibit a recovery. The trial court properly refused to submit this question to the jury.

 Finally, defendant argues that plaintiff's "allegations concerning Colonial's negligence in this case can be traced in large part to alleged defects in the design of the semi-diesel tractor involved in this accident." The lease agreement obligated plaintiff to furnish a safe truck. Because of this, defendant contends the court should apply a doctrine akin to the equitable "clean hands" doctrine and deny recovery. While plaintiff may have alleged defects in the tractor in his complaint, there is no finding of any defect by the court. On the contrary, the finding of fact is that the accident was caused by the negligence of the driver.

For the reasons assigned, we hold the judgment appealed from should be affirmed.

Affirmed.