# United States Court of fAppeals
## For the Eighth Circuit

_____

No. 14-3160
_____

Shawn Olson

*Plaintiff - Appellant*

v.

Push, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: July 1, 2015
Filed: February 22, 2016
[Unpublished]
_____

Before SHEPHERD, BYE, and KELLY, Circuit Judges.
_____

PER CURIAM.

In this action that was removed based on diversity jurisdiction, Minnesota resident Shawn Olson appeals the dismissal of his complaint under Minnesota law against Push, Inc. (Push), a Wisconsin corporation. Upon careful review, and for the reasons set forth below, we reverse the dismissal, and we remand the case to the district court for further proceedings.

In February 2014, a Push representative called Olson and offered him a job with Push in West Virginia, which he accepted. Olson underwent a pre-employment drug test at a clinic in Minnesota, and started working for Push in West Virginia three days later. When the drug test came back as "diluted" five days later, Push treated it as a positive result, and terminated Olson's employment.

Olson initially brought this action in Minnesota state court, alleging that Push had violated a provision of the Minnesota Drug and Alcohol Testing in the Workplace Act (DATWA), Minn. Stat. § 181.950 et seq. As relevant, DATWA prohibits an employer from terminating an employee based on a first positive result of an employer-requested drug or alcohol test, unless the employer has first verified the result by a confirmatory test, and given the employee an opportunity to participate in a counseling or rehabilitation program. See id. § 181.953 subdiv. 10. DATWA defines "employer" as "a person or entity located or doing business in [Minnesota] and having one or more employees." See id. § 181.950 subdiv. 7. "Employee" is defined as "a person . . . who performs services for compensation, in whatever form, for an employer." See id. § 181.950 subdiv. 6.

After Push removed the action based on diversity jurisdiction, the district court dismissed Olson's complaint for failure to state a claim upon which relief could be granted. More specifically, although Push conceded that it did business in Minnesota, the district court interpreted "doing business," as used in DATWA, to include only "relevant business--namely, the employment for which [the entity] is conducting drug testing," and concluded that "doing business" should not be construed as a "broad, stand-alone qualification that applies to any employer who conducts any amount of business in Minnesota, regardless of where the employment is taking place." The district court also found that construing DATWA to apply to Olson's out-of-state employment would invite absurd or unjust results in light of other requirements DATWA imposes on employers. The district court thus concluded that DATWA did not apply to Push as an employer, under the facts of this case.

We review de novo a district court's grant of a motion to dismiss for failure to state a claim, as well as its interpretation and application of state law. See Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007); see also Nolles v. State Comm. for Reorganization of Sch. Dists., 524 F.3d 892, 901 (8th Cir. 2008). We look to Minnesota law to decide the merits of this diversity case, see Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938), and because this case presents a matter of first impression, we must predict, to the best of our ability, how the Supreme Court of Minnesota would decide the case, see Sloan v. Motorists Mut. Ins. Co., 368 F.3d 853, 856 (8th Cir. 2004). In so doing, we consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data; and we are bound by Minnesota's rules of statutory construction. See HOK Sport, Inc. v. FC Des Moines, L.C., 495 F.3d 927, 935 (8th Cir. 2007); Gershman v. Am. Cas. Co. of Reading, PA, 251 F.3d 1159, 1162 (8th Cir. 2001). In Minnesota, the goal of statutory interpretation is "to ascertain and effectuate the intention of the legislature." See Minn. Stat. § 645.16.

"[W]hen the legislature's intent is clear from plain and unambiguous statutory language, [the Supreme Court of Minnesota] 'does not engage in any further construction and instead looks to the plain meaning of the statutory language.'" State v. Bluhm, 676 N.W.2d 649, 651 (Minn. 2004) (quoting State v. Wukawitz, 662 N.W.2d 517, 525 (Minn. 2003)); see also Minn. Stat. § 645.16 ("[W]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). A Minnesota statute is ambiguous only when "the language therein is subject to more than one reasonable interpretation." Amaral v. Saint Cloud Hosp., 598 N.W.2d 379, 384 (Minn. 1999). We conclude that DATWA's broad definition of "employer" clearly and unambiguously includes all entities "doing business in" Minnesota, and that Push, which conceded that it does business in Minnesota, falls within that definition. See Minn. Stat. § 645.08(1) (statutory definitions are to be given controlling effect, unless their observance would involve construction inconsistent with manifest intent of legislature, or repugnant to context of statute).

-3-

DATWA contains no language limiting its application only to drug testing of those employees whose employment is directly related to an employer's Minnesota business activities; rather, the legislature drafted DATWA broadly to encompass all employers that are located in Minnesota, and all employers that conduct business in Minnesota. We also note that the Supreme Court of Minnesota would not read into a statute a requirement that the legislature has purposely or inadvertently omitted; thus, contrary to the district court's interpretation, we decline to read into DATWA's statutory definition of "employer" a requirement that there be a nexus between the drug testing and "relevant business." See Premier Bank v. Becker Dev., LLC, 785 N.W.2d 753, 760 (Minn. 2010) (Minnesota rules of statutory construction "forbid adding words or meaning to a statute" that legislature purposely omitted or inadvertently overlooked, unless legislature's silence on topic causes ambiguity); cf. Hertz Corp. v. State Farm Mut. Ins. Co., 573 N.W.2d 686, 689 (Minn. 1998) (rejecting proposed interpretation that would have created practical exception to broad statutory mandate because, inter alia, exception was nowhere evident in statutory language). We further note that DATWA is remedial in nature, which warrants a liberal construction in favor of the remedies the statute provides. Cf. Hansen v. Robert Half Int'l, Inc., 813 N.W.2d 906, 916 (Minn. 2012) (statutes which are remedial in nature are generally entitled to liberal construction, in favor of remedy provided by law, or in favor of those entitled to benefits of statute).

A comparative review of other Minnesota employee-protection statutes supports our conclusion. See Minn. Stat. § 645.16(5) (intention of legislature may be ascertained by considering, inter alia, "other laws upon the same or similar subjects"); Harris v. Cnty. of Hennepin, 679 N.W.2d 728, 732 (Minn. 2004) (Minnesota statutes should be read as a whole with other statutes addressing the same subject). As previously indicated, the legislature did not limit DATWA's statutory definition of "employer," except to require that the employer be located in, or that it conduct business in, the State of Minnesota. By contrast, in legislation providing employees the right to review and dispute their personnel records, the Minnesota

legislature defined "employee" as "a person who performs services for hire for an employer, provided that the services have been performed predominately within [Minnesota]," <u>see</u> Minn. Stat. § 181.960 subdiv. 2; in the Minnesota Genetic Testing in Employment Act, the legislature defined "employer" as "any person having one or more employees in Minnesota," and "employee" as "a person who performs services for hire in Minnesota for an employer," <u>see</u> Minn. Stat. § 181.974 subdiv. 1; and in the Minnesota Human Rights Act, the legislature defined "employee" as "an individual who is employed by an employer and who resides or works in [Minnesota]," <u>see</u> Minn. Stat. § 363A.03 subdiv. 15. The Minnesota legislature has thus demonstrated that it knows how to use qualifying language to define terms such as "employer" and "employee" narrowly. It has also shown that it knows how to distinguish between classes of employers and employees based on an express, statutorily defined relationship, or lack thereof, between the relevant employment and the employer's Minnesota business activities. <u>See</u> <u>City of Brainerd v. Brainerd Invs. P'ship</u>, 827 N.W.2d 752, 756 (Minn. 2013) (inclusion of language in one statute may demonstrate opposite intent in other statutes wherein legislature could have, but did not, include same language); <u>cf.</u> <u>State v. Wenthe</u>, No. A12-0263, 2015 WL 3875366, at *9 (Minn. June 24, 2015) (it is inappropriate to assume that legislature intended scope of statute to be coextensive with other statutes that contain different language).

In addition, contrary to the district court's reasoning, we do not agree that interpreting "employer" in the broad manner that the plain language suggests would lead to absurd or unjust results. On the contrary, a broad construction of "employer" is eminently compatible with DATWA's purpose, which is to provide employees additional protections in relation to employer-requested drug and alcohol testing. <u>See</u> Minn. Stat. § 181.955 (DATWA sets forth minimum standards and requirements for employee protection relating to employment-related drug testing); <u>see also</u> <u>Rohmiller v. Hart</u>, 811 N.W.2d 585, 591 (Minn. 2012) (indicating Minnesota Supreme Court's reluctance to look past clear and unambiguous plain language of statute to avoid absurd result; court will do so "only when the plain meaning of a statute 'utterly

confounds a clear legislative purpose'" (quoting <u>Toth v. Arason</u>, 722 N.W.2d 437, 442 (Minn. 2006))).

Finally, we are mindful that DATWA's broad definition of "employer" is constrained by the bounds of due process. In order for a state's substantive law to be constitutionally applied in a particular case, the state must have a significant contact or a significant aggregation of contacts with the parties or the underlying facts giving rise to the litigation, creating a state interest, such that the application of its law is neither arbitrary nor fundamentally unfair. <u>See</u> <u>Allstate Ins. Co. v. Hague</u>, 449 U.S. 302, 307-314 (1981); <u>cf.</u> <u>Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.</u>, 294 U.S. 532, 539-43 (1935). Nevertheless, where a state's contacts with the parties or the transaction satisfy the "significant contacts" test for personal jurisdiction, no party may reasonably expect that the state's law cannot control the case, and the state's power to apply its law is "unquestionable." <u>See</u> <u>McCluney v. Joseph Schlitz Brewing Co.</u>, 649 F.2d 578, 580-82 (8th Cir. 1981). We conclude that DATWA can be applied to the facts of this case consistently with due process concerns: Push did business in Minnesota, hired a Minnesota resident, and permitted that Minnesota resident's pre-employment drug test to be conducted in Minnesota. <u>Cf.</u> <u>Houle v. Stearns-Rogers Mfg. Co.</u>, 157 N.W.2d 362, 366-67 (Minn. 1968) (endorsing case-by-case analysis for whether Minnesota had sufficient legitimate governmental interest to apply Minnesota statute). We also conclude that Olson's claim is not precluded based upon the presumption against extra-territorial application of Minnesota statutes or the dormant commerce clause. <u>See</u> <u>Cotto Waxo Co. v. Williams</u>, 46 F.3d 790, 793-94 (8th Cir. 1995).

For these reasons, we reverse the dismissal of Olson's DATWA claim, and we remand this case to the district court for further proceedings.

_____