Evelyn HUTCHINS, Widow of Donald Hutchins, Deceased Employee, Respondent (C0–82–813), Relator (C7–82–887),

v.

MURPHY MOTOR FREIGHT LINES, INC., and Carriers Insurance Company, Relators (C0–82–813), Respondents (C7–82–887).

Nos. C0–82–813, C7–82–887.

Supreme Court of Minnesota.

April 8, 1983.

Scott W. Stevenson, St. Paul, for Murphy Motor Freight Lines, Inc.

Farrish, Johnson, Maschka & Hottinger and John C. Hottinger, Mankato, Curran, Curran & Hollenbeck and Fred D. Hollenbeck, Mauston, Wis., for Hutchins.

YETKA, Justice.

Respondent Evelyn Hutchins, widow of Donald Hutchins, applied for workers' compensation benefits in Minnesota. Her husband, a trucker and Wisconsin resident, was killed in Wisconsin in the course of his employment. The compensation judge granted the benefits, and relators Murphy Motor Freight Lines, Inc., and Carriers Insurance Company appealed to the Workers' Compensation Court of Appeals. The appeals court upheld the decision of the compensation judge, basing the award on the "business localization" test. The appeals court decision was filed and served on June 1, 1982. Relators petitioned this court for a writ of certiorari on June 18, 1982; respondent Evelyn Hutchins petitioned for a writ of certiorari on July 8, 1982. Both writs

issued from this court. We affirm the court of appeals.

Respondent Evelyn Hutchins' husband was a resident of Mauston, Wisconsin. In 1949, he was hired as a truck driver by Dakota Transfer (Dakota) and drove the company's route from Mauston to Chicago. He was a member of the Chicago local of the Teamsters. Eventually, the company began a direct run from St. Paul to Chicago. Mr. Hutchins would go to St. Paul to begin his first trip of the week. At the time the St. Paul-to-Chicago run began, Dakota employees driving that route were given the option of relocating in the St. Paul area at Dakota's expense. Mr. Hutchins declined to do so.

In 1963, Murphy Motor Freight Lines, Inc. (Murphy) purchased Dakota Transfer. Murphy was required by the Interstate Commerce Commission to allow Dakota drivers on the St. Paul-to-Chicago run to continue in their jobs at the same seniority level they had attained at Dakota. At the original hearing and in the proceedings before the court of appeals, it was disputed whether or not Hutchins had, in fact, been hired by Murphy or whether the only hiring had occurred when he had entered the employ of Dakota Transfer. One former Dakota employee testified that, at the time Murphy purchased Dakota, he had filled out an employment application in St. Paul and that he was accompanied on a trip from St. Paul to Chicago by a Murphy road supervisor as a form of road test. There was no evidence as to whether or not Mr. Hutchins went through the same procedure. The compensation judge and four of the five court of appeals judges found that Hutchins had not been hired in Minnesota. One appeals judge disagreed.

During his years driving the St. Paul-to-Chicago route, Hutchins rented an apartment in Minnesota with several other truck drivers. Hutchins stayed at the apartment before and between trips. Hutchins' paycheck was handed to him at Murphy's St. Paul terminal.

Murphy is headquartered in Minnesota, has hundreds of semi-trailers licensed here, and has more than 15 terminals in Minnesota, including the terminal at Roseville, a suburb of St. Paul, one of the company's largest. At the time of Hutchins' death, there were approximately 50 dispatches from St. Paul and 50 loads dispatched to St. Paul on an average day.

On April 20, 1979, Mr. Hutchins was killed in a collision near Janesville, Wisconsin. Murphy has been paying workers' compensation benefits to Evelyn Hutchins under Wisconsin law. Wisconsin has a limit of $66,500. Minnesota has no such limit. The compensation judge ordered that the Wisconsin benefits be set off against the Minnesota benefits.

The issues raised on appeal are:

1. Is respondent Hutchins entitled to workers' compensation benefits under the "business localization" test?

2. Is respondent Hutchins entitled to workers' compensation benefits under Minn.Stat. § 176.041, subds. 2, 3 (1980)?

3. Was respondent Hutchins timely in her petition for certiorari?

1. Both the compensation judge and the Workers' Compensation Court of Appeals found that respondent was entitled to an award of benefits under the common-law "business localization" test. This court adopted the business localization test in *State ex rel. Chambers v. District Court,* 139 Minn. 205, 166 N.W. 185 (1918). The test was discussed by the court in *Follese v. Eastern Airlines,* 271 N.W.2d 824 (Minn. 1978). The test was described as follows:

Under this test, an employee is afforded relief for out-of-state injuries under our compensation act upon proof that the employer's business was localized in Minnesota and that the employee's services at the time of injury were referable to that localized business. As developed over the years, this test controlled extraterritorial application of our laws to such injuries even though the contract of employment was not entered into in Minnesota, *Marrier v. National Painting Corp.,* 249 Minn. 382, 82 N.W.2d 356 (1957), and even

though at the time of injury the employee was a nonresident, *Aleckson v. Kennedy Motor Sales Co.,* 238 Minn. 110, 55 N.W.2d 696 (1952). Consistent with the purpose of compensation acts, the rationale of the test is that an employer who carries on substantial business in this state should be expected and required to insure against the risk and burden of payment of an employee's work-related injury, wherever it occurs, as part of the employer's localized business expense.

271 N.W.2d at 829.

In 1967, the legislature amended Minn. Stat. § 176.041, adding subdivisions 2–5. Subdivisions 2 and 3 dealt with the extraterritorial application of the act.[1] Subdivision 5 provided that "[e]xcept as specifically provided by subdivisions 2 and 3 of this section, injuries occurring outside of this state are not subject to the provisions of this chapter." Minn.Stat. § 176.041, subd. 5 (1971). There is no dispute that the adoption of these provisions effected a statutory abolition of the business localization rule. This fact was recognized in *Follese,* 271 N.W.2d at 832.

In 1974, however, Minn.Stat. § 176.041, subd. 5 (1971) was repealed. Act of April 12, 1974, ch. 486, § 6, 1974 Minn.Laws 1230, 1237. Respondent has successfully argued below that the effect of repealing subdivision 5 was to expand the scope of extraterritorial jurisdiction beyond the previously exclusive subdivisions 2 and 3, and to reinstate the business localization test. Relators' main argument before us is that the repeal had no effect whatsoever and that subdivisions 2 and 3 are still exclusive.

The effect of repealing Minn.Stat. § 176.041, subd. 5 (1971) is central to this case but difficult to ascertain with certainty. On the one hand, an examination of the legislative history reveals no explicit expression of a legislative intent to end the exclusivity of subdivisions 2 and 3. On the other hand, it is difficult to believe that the legislature intended the repeal of subdivision 5 to be utterly without meaning, especially when the main thrust of the bill containing the repealer was the expansion of workers' compensation benefits.

This court has provided very little guidance on the subject. Only one case discusses the provision. *Follese v. Eastern Airlines,* 271 N.W.2d 824, 832 (Minn.1978). In *Follese,* the court printed subdivisions 2 through 5 in a footnote, but italicized only subdivision 5. *Id.* at n. 12. We said that our decision had precedential value "only for work-related injuries occurring before passage of Minn.St.1967, § 176.041, subds. 2, 3, 4, 5, in 1967, which are therefore governed by the common-law tests that we have applied." *Id.* at 832. While the special emphasis given subdivision 5 indicates that the court thought it important, *Follese* does not mention that the subdivision had been repealed 4 years earlier.

▮ We believe that the repeal of Minn.Stat. § 176.041, subd. 5 (1971) should be held to end the exclusivity of subdivisions 2 and 3 of the same section and to revive the common-law business localization test. "The Workers' Compensation Act, as a whole, has consistently been recognized to be remedial legislation entitled to liberal construction." *Fuller v. Farmers' Coop. Oil Ass'n,* 322 N.W.2d 359, 361 (Minn.1982). In light of this recognition, we should not assume that the legislature intended the re-

---

1. Subdivisions 2 and 3, which are pertinent to this appeal, provide:

   Subd. 2. If an employee who regularly performs the primary duties of his employment within this state, or who is hired within this state, receives an injury while outside of this state in the employ of the same employer, the provisions of this chapter shall apply to such injury unless the transfer is normally considered to be permanent. If a resident of this state is transferred outside the territorial limits of the United States as an employee of a Minnesota employer, he shall be presumed to be temporarily employed outside of this state while so employed.

   Subd. 3. If an employee hired in this state by a Minnesota employer, receives an injury while temporarily employed outside of this state, such injury shall be subject to the provisions of this chapter. If the employer's business is in Minnesota and the employee's resident is in Minnesota, employment outside of this state shall be considered temporary.
   Minn.Stat. § 176.041, subds. 2, 3 (1982).

peal of subdivision 5 to be an action without effect. We thus concur in the findings and holding of the Workers' Compensation Court of Appeals.

Since this holding is dispositive of the case, we do not deem it necessary to pass on the other two issues raised.

Affirmed.