Alberta SHANNON (Widow of
John W. Shannon)

v.

COMMUNICATIONS SATELLITE CORPO-
RATION and Aetna Life & Cas-
ualty Company.

Supreme Judicial Court of Maine.

March 30, 1973.

Perkins, Thompson, Hinckley, Thaxter & Keddy by Thomas Schulten, James R. Flaker, Portland, for plaintiff.

Mahoney, Robinson, Mahoney & Norman by Lawrence P. Mahoney, Robert F. Hanson, Portland, for defendants.

Before DuFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

On July 1, 1970 Alberta Shannon petitioned the Maine Industrial Accident Commission to make an award of compensation to her as widow of John W. Shannon.

Mr. Shannon, while in the employ of Communications Satellite Corporation (Comsat), had been killed on April 9, 1970 in an automobile collision in the Kingdom of Thailand. For present purposes, without deciding, we may assume that Mr. Shannon's death resulted, within the meaning of the Maine Workmen's Compensation statute, from an accident in the course, and arising out, of his employment. Comsat at all times relevant has been an assenting employer under the Maine Workmen's Compensation statute (39 M.R.S.A. § 2-1).

Mr. Shannon had been employed by Comsat in June of 1965 to work at its Earth Station in Andover, Maine. From June 1965 until the spring of 1969 he worked in Andover as an engineer. He was then sent on a one year assignment to provide technical support to the Kingdom of Thailand in the operation of an Earth Station which was owned by Thailand but, by contractual arrangement between Thailand

and Comsat, was serving as a link in the world-wide communications system operated by Comsat. During all the time Mr. Shannon had worked at Andover he and his wife maintained their home at Bethel, Maine. Although Mrs. Shannon had accompanied Mr. Shannon to Thailand during his assignment there, the Shannons continued to maintain their home at Bethel. Shortly after her husband's death Mrs. Shannon returned to Bethel. In her petition for award of compensation she states that she is "of Bethel, Maine."

The record reveals that had Mr. Shannon survived his one year assignment in Thailand, he most probably would have continued to work for Comsat under reassignment to Washington, D. C., rather than to Maine.

After the foregoing factual situation had been developed in the hearing before the Industrial Accident Commission, the Commission dismissed the petition for award of compensation on the ground that it lacked jurisdiction of the subject-matter. By pro forma decree (39 M.R.S.A. § 103) the Superior Court (Kennebec County) affirmed.

Petitioner's appeal to this Court presents this subject-matter jurisdiction issue as the sole question to be decided.[1]

We conclude that subject-matter jurisdiction was validly conferred upon the Industrial Accident Commission and, therefore, we sustain the appeal.

The problem is appropriately analyzed by subdivision into two separate inquiries: (1) evaluation of the impact of the "due process" clause of the federal Fourteenth Amendment to limit the power assertable

[1]. We emphasize that the issue is strictly *a lack of subject-matter jurisdiction* and not either (1) whether the Commission should abstain from *exercising* a subject-matter jurisdiction avowedly possessed by it, or (2) a question of the choice of which State law shall be applied to control decision in the *exercise* by the Maine Industrial Accident Commission of subject-matter jurisdiction resting in it, either as such choice of law might be required

constitutionally by the federal "full faith and credit" clause (but see Crider v. Zurich Insurance Company, 380 U.S. 39, 85 S.Ct. 769, 13 L.Ed.2d 641 (1965) tending to establish that in workmen's compensation cases the "full faith and credit" clause has become essentially inapplicable) or, absent impact of the "full faith and credit" clause, under general substantive "conflict of laws" principles.

by a State under its territorial sovereignty, and (2) assessment of whether the State of Maine has chosen, in terms of its own internal law, to restrict the subject-matter jurisdiction granted to the Maine Industrial Accident Commission within bounds more narrow than those permissible under federal "due process" mandates.

■ Taking the second of the above questions first, we are aware that some states have elected, as their own internal public policy, to grant subject-matter jurisdiction to the tribunal established for the administration of workmen's compensation problems within contours less expansive than federal "due process" tolerates. We now decide, however, that Maine is not among this group and has chosen, rather, to confer upon its Industrial Accident Commission subject-matter jurisdiction in workmen's compensation contexts in the fullest scope consistent with federal "due process" limitations.

Among the entirety of the provisions of the Maine Workmen's Compensation statute (39 M.R.S.A. §§ 1–111, incl.) none has been called to our attention, or disclosed by our own independent research, having reasonable tendency to indicate design by the Maine legislature to restrict the coverage of the subject-matter jurisdiction of the Industrial Accident Commission in terms dependent upon any particularly specified factors.[2]  Hence, the only limitations to be asserted upon the subject-matter jurisdictional reach of the Maine Industrial Accident Commission are those which must be read into the statute as implicit limitations imposed by the "due process" clause of the federal Constitution.

Prior decisions of this Court bearing upon the problem of subject-matter jurisdiction, although few in number and without extended discussion of the precise issue, tend to confirm a policy by this Court —in conformity with the explicit direction of the Workmen's Compensation statute itself that it be liberally construed and applied to accomplish its beneficent purposes —favoring expansive jurisdictional compass.  Saunders' Case, 126 Me. 144, 136 A. 722 (1927) (subject-matter jurisdiction recognized in the Maine Industrial Accident Commission as to a Maine resident hired by a Maine-chartered corporation but wholly owned by a Canadian corporation, and all work having been performed and the injury having occurred in Canada); and Smith v. Heine Safety Boiler Co., et al., 119 Me. 552, 112 A. 516 (1921) (subject-matter jurisdiction authorized in the Maine Industrial Accident Commission as to an injury occurring in Maine but both the employer and the employee being from outside of Maine).

Since the Maine Industrial Accident Commission under the internal law of Maine has been granted subject-matter jurisdiction coextensive with the fullest reach allowed by the "due process" requirements of the Constitution of the United States, disposition of the instant case is controlled by the principles defining the extent to which federal "due process" denies territorial sovereignty power to the State of Maine to confer subject-matter jurisdiction in workmen's compensation situations.

Fundamentally, federal "due process" considerations arise because a single workmen's compensation factual complex often

2.  The provisions of 39 M.R.S.A. § 2–5–B (relative to the definition of "employee") —that "Employers who hire workmen within this State to work outside the State" are authorized to "agree with such workmen" to have the Maine statutory "remedies" operate with the effect that they are to be "exclusive as regards injuries received outside this State by acci-

dent arising out of and in the course of such employment; . . . ", and further specifying a "presumption" of such agreement for exclusivity of remedies "unless otherwise specified"—tends to confirm, rather than contradict, an interpretation that the statute is intended to have a plenary reach for subject-matter jurisdiction.

generates social and economic consequences creating potential interests in a plurality of states. Such state interests become "contact" points for the assessment of the kind, and degree, of relationships minimally essential to the recognition of permissible State powers to assert subject-matter jurisdiction, as an incident of territorial sovereignty, consistently with limitations constitutionally imposed by the "due process" clause of the federal Fourteenth Amendment. In list form—and without intimation (by the manner in which listing is stated) as to their substantive sufficiency, singly or in combination, to support a state's assertion of subject-matter jurisdiction—they are: (1) place injury occurred; (2) place contract of employment was entered into; (3) place employment relationship exists or is carried out; (4) place in which the business or industry is localized;

(5) place of employee's residence; (6) the place the parties might have expressly designated in their employment contract to govern (by its law) their workmen's compensation rights and liabilities.[3]

The Commission concluded that the evidence establishes, here, only a single subject-matter "contact" with the State of Maine—that Maine was the place of residence of the employee and of his widow as the purported beneficiary of compensation.[4] Relying on this initial conclusion as its premise, the Commission made an ultimate decision that

"residence alone of the employee and the employee's dependent is held not to be a sufficient contact . . . to establish jurisdiction of the Maine Industrial Accident Commission in this case."

3. The above listing is as stated in Larson, Workmen's Compensation Law, Section 86.10, as cited by the opinion of the Commission.

In the workmen's compensation sections of the Second, Restatement of Conflicts, the itemization is given as follows:

"§ 181. Permissible Range of Territorial Application

"A State of the United States may consistently with the requirements of due process award relief to a person under its workmen's compensation statute, if

(a) the person is injured in the State, or

(b) the employment is principally located in the State, or

(c) the employer supervised the employee's activities from a place of business in the State, or

(d) the State is that of most significant relationship to the contract of employment with respect to the issue of workmen's compensation under rules of §§ 187–188 and 196 [contract sections], or

(e) the parties have agreed in the contract of employment or otherwise that their rights should be determined under the workmen's compensation act of the State, or

(f) the State has some other reasonable relationship to the occurrence, the parties and the employment."

Restatement, Second, Conflict of Laws, Chapter 7 § 181

Presumably, under the Restatement listing item (5) of the Larson "contacts", concerning the place of the employee's residence, would be subsumed under item (f) of the Restatement listing.

Although in the Larson text some language tends to suggest that the "contacts" are listed as conjunctive, further elucidation abundantly clarifies that a total conjunction was not intended and that among the list various individual "contacts" have been recognized as sufficient, singly, to support subject-matter juridsiction (e. g., Section 86.34). The Restatement listing is plainly worded in a manner indicating that each of the single items is recognized, alternatively, as a sufficient single "contact" to support subject-matter jurisdiction consistently with federal "due process."

4. Respondents (appellees) have argued on appeal that the record is not clear that after Mrs. Shannon filed the petition for award of compensation, she intended to live in Maine. While the evidence shows that Mrs. Shannon happened to be staying with relatives in New Mexico at the time of the hearing before the Industrial Accident Commission, the evidence adequately supports the Commission's finding that her residence was in Maine at the time she filed her petition for an award of compensation; and to the extent that this imports a continuing intention to remain domiciled in Maine it is supported by the evidence and must be held a final determination of fact. Temporary sojourn in New Mexico with relatives is not inconsistent with the intention to be a Maine domiciliary.

Although the correctness of this ultimate conclusion of the Commission is doubtful,[5] we find that we need not decide the issue to dispose of the present appeal. We hold that the Commission committed legal error in arriving at the initial underlying premise on which it rested its end-conclusion.

Specifically, in relation to that "contact" articulated in words as the "localization" situs of the employer's business or industry, the Commission appears to have conceived the legal meaning of "localization" to import a degree of contact with a particular locality which is sufficiently maximal to exclude other places in which the business of the employer operates. On this basis, the Commission seems to have concluded that if one locality may be found to be the predominant central core of the employer's business, all other locations in which business operations are conducted must be held without legal significance in the evaluation of the extent to which an assertion of subject-matter jurisdiction is consistent with federal "due process" requirements.

By such approach the Commission in the present situation concluded that Comsat was "localized" in Washington, D. C., and, therefore, precluded all legal possibility of multiple "localizations", notwithstanding that Comsat conducts substantial business operations at its Earth Station in Andover, Maine.

■ In adopting this technique for evaluation of the legitimate interests of the State of Maine to assert subject-matter jurisdiction in a workmen's compensation case, the Commission committed error of law. The decided cases in which this contact of "localization" of the employer's business has been relied upon (most of them in Minnesota which has made extensive use of this concept) reveal that "localization" has not been thought to signify, in multiple operations situations, that single place of maximum, or predominant, contact to the exclusion of all lesser "localizations." "Localization", rather, has been taken to mean that any one among a plurality of states may be said to have a legitimate subject-matter interest so long as the business of the employer is conducted in a manner which establishes a "substantial presence" of the employer in such state. Hagberg v. Colonial and Pacific Frigidways, Inc., 279 Minn. 396, 157 N.W.2d 33 (1968); Rice v. Keystone View Company, 210 Minn. 227, 297 N.W. 841 (1941); Cf. International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1954).

In the instant case, the record shows, as the Commission itself acknowledged (utilizing language of counsel for the petitioner), that Comsat has a "very substantial profile in Maine." Its Earth Station at Andover has been conducted here for many years and is shown by the evidence

---

5. Both *Larson*, supra, §§ 86.00, 86.10, 86.33 and the Restatement, supra, § 181, comment (a) contain statements that residency by itself, in light of Cardillo v. Liberty Mutual Insurance Company, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947) might well be regarded as sufficient to sustain subject-matter jurisdiction consistently with federal "due process." The Restatement adds the caveat:

"No case is known, however, where the State of an employee's domicile, which had no other relationship to the parties or to the employment, has awarded the employee relief under its workmen's compensation statute."

There have been persistent dicta in the decisions of the Supreme Court of the United States concerned with workmen's compensation issues which emphasize the high priority importance, as a legitimate state interest, of a state's concern to provide for the economic welfare of its residents. See: Cardillo v. Liberty Mutual Insurance Company, supra; Alaska Packers Association v. Industrial Accident Commission, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935); Carroll v. Lanza, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955); Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L. Ed. 149 (1943); Crider v. Zurich Insurance Company, 380 U.S. 39, 85 S.Ct. 769, 13 L.Ed.2d 641 (1965).

to be an essential functional link in the total chain of intercommunications around the earth. Andover is one of four Earth Stations maintained in the 48 contiguous states and of seven in all of the United States, including Puerto Rico, and of a total of approximately fifty existing around the globe. The Earth Station at Andover operates twenty-four hours a day, seven days a week and a breakdown in its functions disrupts the total intercommunications operation. Comsat is an "assenting employer" under the Workmen's Compensation law (39 M.R.S.A. § 2–1).

Comsat thus has a "substantial presence" in Maine sufficient to mark as error of law the Commission's refusal to recognize that Comsat's business operation in Maine provided an interest "contact" to be taken into account in the assessment of Maine's power to assert subject-matter jurisdiction.

Furthermore, we conclude that the Commission erred in denying legal significance, as a make-weight "contact" interest, to the fact that Maine had been the most recent state of the United States in which Mr. Shannon had exercised substantial employment relationship to Comsat prior to his admittedly limited and temporary work assignment in another country. That the evidence warranted a Commission finding of fact that

"it was anticipated on his return to the United States . . . [Mr. Shannon] would not be reassigned to the Comsat Earth Station at Andover, Maine, . . . but would be reassigned to Comsat in Washington, D. C."

is insufficient to deprive the work relationship between Mr. Shannon and Comsat as it had existed in Maine of all legal significance and to preclude it from serving as an assisting "contact" factor supportive of the validity of an assertion by Maine of subject-matter jurisdiction.

■ When the issue is, as here, evaluation of the legitimate interests of various *states* of the United States, relative to the scope of the powers of *states* as controlled by the "due process" clause of the federal Fourteenth Amendment, the balancing of "interests-contacts" should properly assign no less weight to an immediately past and substantial employment relationship existing in one state than might be attributed to an employment relationship which is planned to come into existence in the future in some other state. In this context the comment of *Larson*, supra, in Section 87.42 seems most appropriate:

"The analogy to the law governing residence is apparent, with the old residence persisting until the new one becomes fixed."

In short, as further elucidated by *Larson*, the immediately previous employment situs retains continuing legal significance, for purposes of subject-matter jurisdiction consistently with due process, "until something happens that shows clearly a transference of the relationship to another state."

■ We decide, therefore, that the factors:

(1) the employee and his surviving spouse (as compensation beneficiary) resided at all relevant times in the State of Maine,

(2) Comsat has continuingly maintained by its business operations a "substantial presence" in Maine, and

(3) a substantial employment relationship between the employee and Comsat had existed in the State of Maine in the most immediate past without being supplanted by a relationship to any other State of the United States

in combination provide legitimate "interests" of the State of Maine sufficient to sustain subject-matter jurisdiction in the Maine Industrial Accident Commission consistently with "due process" requirements of the federal Constitution.

Since we have decided also that the Maine Workmen's Compensation statute has conferred upon the Industrial Accident Commission subject-matter jurisdiction, relative to workmen's compensation matters, to the fullest extent allowed by federal "due process", the ultimate conclusion is that the Commission had jurisdiction of the subject-matter of petitioner's claim for an award of compensation.

The dismissal of the petition for award of compensation on the ground of lack of subject-matter jurisdiction was error.

The entry is:

Appeal sustained.

Further ordered that an allowance of $350.00 to cover fees and expenses of counsel, plus cost of the record, be paid by the respondents (appellees) to the petitioner (appellant).