E. Ann DISSELL

v.

TRANS WORLD AIRLINES

and

Insurance Company of North America.

Supreme Judicial Court of Maine.

Argued April 30, 1986.

Decided June 19, 1986.

Jensen, Baird, Gardner & Henry, Deborah M. Mann (orally), Nicholas Nadzo, Portland, for plaintiff.

Richardson, Tyler & Troubh, Eve H. Cimmet (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

WATHEN, Justice.

Trans World Airlines and its insurance carrier, Insurance Company of North America (hereinafter referred to simply as TWA), appeal from a decision of the Appellate Division of the Workers' Compensation Commission, affirming a single commissioner's award of compensation to E. Ann Dissell. TWA contends that the Commission lacked both personal jurisdiction over it and subject-matter jurisdiction over Dissell's compensation claim. Because we conclude that TWA has waived any right to review by this Court of its challenge to personal jurisdiction, we decline to consider that issue. In addition, we reject TWA's contention that the Workers' Compensation Commission lacked subject-matter jurisdiction. Accordingly, we affirm the award of compensation.

I.

In 1975, while a resident of Maryland, Ann Dissell applied to TWA for a job as a flight attendant. After interviews in Washington, D.C., and Kansas City, Missouri, TWA hired Dissell and assigned her to Kansas City. A TWA attendant's flights originate from and return to their assigned location.

In 1977, Dissell was assigned to Boston, Massachusetts, and she took up residence in Portland. One year later Dissell was transferred to New York for one year and was then transferred back to Boston, which remained her city of assignment until her injury in 1981. During this time, Dissell commuted from successive residences in Portland, Topsham, and Brunswick to the origination point of her flights in either Boston or New York.

On May 21, 1981, Dissell injured her back during a flight from Boston to Chicago. Immediately after the injury, she returned to her Maine residence and received medical treatment here. Dissell, who currently resides in Freeport, has not worked since her injury. Since July, 1981, she has received compensation pursuant to a signed agreement in which TWA agreed to pay benefits in accordance with the Massachusetts Workers' Compensation Act.

Dissell filed a petition for award with the Maine Workers' Compensation Commission on September 7, 1983. After conducting hearings, the single commissioner granted Dissell's petition on September 13, 1984, finding sufficient contacts to support the Commission's assertion of both personal and subject-matter jurisdiction and awarding ongoing compensation for total incapacity, with credit to TWA for payments made pursuant to the Massachusetts agreement. In response to a motion for findings of fact and conclusions of law, the single commissioner issued a supplemental decision stating that the finding as to subject-matter jurisdiction was based on TWA's business activities in Maine and on Dissell's residence in Maine.

TWA appealed the single commissioner's decision to the Appellate Division, raising only the issue of subject-matter jurisdiction. The Division, one panelist dissenting, affirmed the single commissioner. In its decision, the Division rejected the single commissioner's reliance on business activities but concluded that Dissell's residence in Maine was sufficient by itself to support the Commission's assertion of subject-matter jurisdiction over her claim. TWA next filed a petition seeking review of the Division decision by this Court. Again, TWA raised only the issue of subject-matter jurisdiction. We granted the petition for appellate review.

## II.

■ In its briefs and in oral argument before this Court, TWA contends that the single commissioner's decision must be reversed because TWA does not have sufficient contacts with Maine to support the Commission's assertion of personal jurisdiction. Both the statute and the court rule governing prosecution of an appeal from a decision of the Appellate Division require that the petition for appellate review set forth the alleged errors of which review is sought. 39 M.R.S.A. § 103-C(1) (Pamph. 1985); M.R.Civ.P. 73(i)(2). In its petition for appellate review, TWA did not assert any challenge to the single commissioner's

finding of personal jurisdiction or the Appellate Division's failure to reverse that finding. By failing to do so, TWA has waived any right it may have had to review by this Court of the personal jurisdiction issue.

## III.

■ We have previously held that the Legislature intended the Commission's subject-matter jurisdiction to be coextensive with that allowed by the United States Constitution. *Harlow v. Emery-Waterhouse Co.,* 484 A.2d 1002, 1004–05 (Me. 1984); *Shannon v. Communications Satellite Corp.,* 302 A.2d 582, 584 (Me.1973). Given this legislative intent, TWA's challenge to the subject-matter jurisdiction of the Workers' Compensation Commission presents a question of constitutional limitations on choice-of-law [1] imposed by the Due Process Clause and Full Faith and Credit Clause of the United States Constitution. *Harlow v. Emery-Waterhouse Co.,* 484 A.2d at 1004–05.

We have previously analyzed the limits imposed upon the Commission's subject-matter jurisdiction in terms of the following relevant contacts:

> (1) place injury occurred; (2) place contract of employment was entered into;

1. The identity between the question of subject-matter jurisdiction and that of constitutional limitations on choice-of-law in the context of claims before the Workers' Compensation Commission is a feature that distinguishes that administrative agency from a trial court. The Superior Court, for example, has subject-matter jurisdiction of all cases not assigned to the exclusive jurisdiction of the District Court or the Law Court. 4 M.R.S.A. § 105 (Supp.1985–1986). If on its facts a case does not fall within the exceptions to Superior Court jurisdiction, the court is said to have subject-matter jurisdiction over the case. In the exercise of its subject-matter jurisdiction, however, the Superior Court may, consistent with the conflict-of-law provisions of Maine law, apply the law of another state to the case. Only if the Court chooses to apply Maine law does the issue of constitutional limitations on choice-of-law arise.

The Workers' Compensation Commission, on the other hand, is an administrative agency created solely to administer the Maine Workers' Compensation Act. As such, the Commission can do nothing other than apply the Maine Workers' Compensation Act to claims for compensation brought before it. Thus, cognizance by the Commission of any claim having extraterritorial aspects results in the application of Maine law to that claim. Under *Harlow* and *Shannon,* the Commission may take cognizance of any compensation claim unless prohibited by the federal constitution. The constitutional prohibition arises only when Commission action on a claim violates federal constitutional restrictions on the extent to which Maine may apply its law to a claim having multistate aspects. Accordingly, whether the Commission can act on a claim—i.e., has subject-matter jurisdiction over that claim—is to be determined by an examination of constitutional limitations on choice-of-law.

(3) place employment relationship exists or is carried out; (4) place in which the business or industry is localized; (5) place of employee's residence; (6) the place the parties might have expressly designated in their employment contract to govern (by its law) their workmen's compensation rights and liabilities.

*Id.* at 1004. Of these contacts, only the employee's residence in Maine is present in this case.[2] Thus, the issue in this case is whether, under the United States Constitution, Dissell's residence in Maine creates a sufficient state interest to support the Commission's assertion of subject-matter jurisdiction over her claim.

The federal constitution does not bar a state from applying its law to an occurrence so long as that state has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Insurance Co. v. Hague,* 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). However, the two applicable constitutional provisions—the Due Process Clause and the Full Faith and Credit Clause—present distinct inquiries. The due process analysis is directed toward fairness to the litigants before the court, while full faith and credit analysis focuses on infringement upon the sovereignty of sister states. *Id.* at 320, 101 S.Ct. at 644 (Stevens, J., concurring in judgment); *Harlow v. Emery-Waterhouse Co.,* 484 A.2d at 1005.

■ As the Supreme Court has pointed out, the state where an employee lives has a considerable interest in ensuring adequate compensation for work-related injuries because "it is there that he is expected to return; and it is on his community that the impact of the injury is apt to be most keenly felt." *Crider v. Zurich Insurance Co.,* 380 U.S. 39, 41, 85 S.Ct. 769, 770, 13 L.Ed.2d 641 (1965). *See also Cardillo v. Liberty Mutual Insurance Co.,* 330 U.S. 469, 476, 67 S.Ct. 801, 805, 91 L.Ed. 1028 (1947) (state has "legitimate interest in providing adequate workmen's compensation measures for its residents"); *Alaska Packers Association v. Industrial Accident Commission,* 294 U.S. 532, 542, 55 S.Ct. 518, 521, 79 L.Ed. 1044 (1935) (danger that an injured employee might become a public charge is a matter of "grave public concern to the state"). In the present case, Ann Dissell became a Maine resident years before her injury, and in fact, Maine was her residence at the time of her injury and has remained such ever since. The existence of Maine's interest in ensuring that the burden resulting from Dissell's work-related injury falls upon her employer rather than upon her community precludes any contention that application of Maine law to Dissell's injury is arbitrary. *Cf. Delano v. City of South Portland,* 405 A.2d 222, 225 (Me.1979) (purpose of Workers' Compensation Act to transfer burden of industrial injuries from individual to employer). In addition, we perceive no fundamental unfairness in requiring TWA to compensate Dissell according to the law of the state in which she resides and upon which she would be dependent for support should compensation for her injury prove inadequate. We conclude that Dissell's residence in Maine constitutes a legitimate and substantial interest sufficient to overcome any due process limitation upon the application of Maine law to her claim.

**2.** As noted above, the single commissioner based his finding of subject-matter jurisdiction on both the employee's residence and TWA's business activities in Maine. The Appellate Division rejected the commissioner's reliance on business activities. The Division decision noted that the existence of business activities is not among the contacts set forth by this Court as relevant to subject-matter jurisdiction and concluded that, if the single commissioner intended business activities to connote localization, one of the listed contacts, evidence in the record would not support a finding that TWA's business was localized in Maine. We accept the Appellate Division's conclusion that residence is the only relevant contact present in this case. In any event, we agree that the evidence of TWA's business activities in Maine contained in the record falls far short of demonstrating the "substantial presence" necessary to support a finding of localization. *See Shannon v. Communications Satellite Corp.,* 302 A.2d at 586.

On the full faith and credit question, the parties have not identified any state with such an overriding interest in the present case that application of Maine law constitutes an infringement upon that state's sovereignty.[3] Indeed, this case presents a situation in which relevant contacts are widely dispersed, with no one state having a conglomeration of contacts. Dissell received her injury on an airplane, and the record does not reveal over which state the plane was flying when the injury occurred or even if the plane was over the United States at the time. Presumably, the contract for hire was executed in Kansas City, Missouri, but again the record does not specifically determine the place of contract. The employment relationship was carried out partly in Massachusetts but partly in numerous other states as well. We conclude that no single state is so connected with the occurrence giving rise to the instant litigation that application of Maine law would arbitrarily or unfairly infringe upon that state's sovereign power.

Having determined that neither the Due Process Clause nor the Full Faith and Credit Clause[4] bars application of Maine law to Dissell's compensation claim, we conclude that the Workers' Compensation Commission possessed subject-matter jurisdiction to award compensation in this case.

The entry is:

Decision of the Appellate Division affirmed.

It is ordered that the employer pay to the employee $550 for her counsel fees plus her reasonable out-of-pocket expenses for this appeal.

All concurring.

---

**3.** To apply Maine law consistently with the requirements of the Full Faith and Credit Clause, it is not necessary that Maine possess a greater interest in the litigation than any other state. *See Carroll v. Lanza,* 349 U.S. 408, 411–414, 75 S.Ct. 804, 806–807, 99 L.Ed. 1183 (1955) (abandoning the weighing of interests analysis applied to a full faith and credit challenge in *Alaska Packers Association v. Industrial Accident Commission,* 294 U.S. at 549–50, 55 S.Ct. at 524–525). Rather, a state may apply its own law whenever it has a valid interest in litigation and such an application does not reflect "hostility to the public Acts" of another state, *Carroll v. Lanza,* 349 U.S. at 413, 75 S.Ct. at 807, or "create a substantial threat to our constitutional system of cooperative federalism," *Nevada v. Hall,* 440 U.S. 410, 424 n. 24, 99 S.Ct. 1182, 1190 n. 24, 59 L.Ed.2d 416 (1979). *See Allstate Insurance Co. v. Hague,* 449 U.S. at 322–23 & n. 10, 101 S.Ct. at 645–646 & n. 10.

**4.** As noted above, Dissell has received compensation pursuant to an agreement executed in accordance with the Massachusetts Workers' Compensation Act. A copy of this agreement was introduced as an exhibit during a hearing before the single commissioner. Neither the agreement nor any other evidence in the record reflects that the agreement was ever approved by the Massachusetts Industrial Accidents Board. Although under Massachusetts law an approved agreement conclusively determines entitlement to compensation, *Kareske's Case,* 250 Mass. 220, 145 N.E. 301 (1924), an agreement is ineffective unless approved by the board. *Conlon v. City of Lawrence,* 299 Mass. 528, 13 N.E.2d 425 (1938). Because the agreement in this case was never approved, and thus never became conclusive under Massachusetts law, we need not address whether the full faith and credit that must be accorded to final judgments and awards of foreign tribunals, as opposed to foreign statutes, would bar the Maine Commission from awarding compensation in the present case. *See Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980).