NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0110-18T4

RICHARD MARCONI,

       Petitioner-Appellant,

v.

UNITED AIRLINES,

       Respondent-Respondent.

_____

**APPROVED FOR PUBLICATION**

**July 22, 2019**

**APPELLATE DIVISION**

Argued May 20, 2019 – Decided July 22, 2019

Before Judges Messano, Fasciale and Gooden Brown.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition Nos. 2016-31488 and 2016-31489.

Cristie Robostell Nastasi argued the cause for appellant (Hoffman Di Muzio, attorneys; Kenneth A. Di Muzio, of counsel; Cristie Robostell Nastasi, on the brief).

Prudence M. Higbee argued the cause for respondent (Capehart & Scatchard PA, attorneys; Prudence M. Higbee, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

New Jersey resident Richard Marconi filed two claim petitions with the Camden Vicinage of the Division of Workers' Compensation (the Division). In the first, Marconi alleged a workplace injury to his left hip occurred on January 31, 2015, while working for United Airlines (United) in Philadelphia. United answered the petition and acknowledged that it employed Marconi on the date of the incident, his injury arose out of the course of his employment, and it had made full payment of benefits to Marconi.

In his second petition, Marconi alleged an occupational injury to his hip while "[p]erforming repetitive duties [as an] aircraft technician" between 1986 through present. The petition again asserted the injury occurred at the "[e]mployer's [p]remises" in Philadelphia. United answered this petition, denied the injury arose out of Marconi's employment, and reserved all defenses under the New Jersey Workers' Compensation Act (WCA), N.J.S.A. 34:15-1 to -128.[1]

United subsequently moved to dismiss both petitions alleging lack of jurisdiction. In her certifications, United's counsel explained Marconi was "hired in San Francisco in 1986," began working at Philadelphia International Airport in 1988, "was displaced due to furlough in 2009 and transferred to . . .

---

[1]  Counsel advised us at oral argument that New Jersey's workers' compensation benefits for permanency awards are greater than Pennsylvania's.

Dulles [Airport in] Washington[,] . . . transferred back to Phil[adelphia] in 2012 and . . . worked there ever since." Counsel asserted Marconi "was not hired in . . . New Jersey, the accident did not occur in New Jersey and United does not have any contact with . . . New Jersey."[2]

The Workers' Compensation judge (WCJ) conducted a hearing limited to the jurisdictional issue. Marconi was the sole witness.[3]

Although Marconi temporarily lived in other cities throughout his career, he was born and raised in New Jersey and lived here continuously since 1988, when United transferred him to Philadelphia. Marconi's supervisor in Philadelphia reported to a United employee at Newark's Liberty International Airport, a United "hub" for at least a decade. Although never stationed at Newark, Marconi frequently depended on the technical advice of United's staff at that airport and would call "once every couple of months" for assistance.

Marconi received training all over the world, including in Newark. He would fly from Newark whenever United assigned him to do "field service,"

---

[2] In the identical certifications supporting both motions, counsel asserted that United denied jurisdiction in its previously filed answers. This is contrary to the record; United only challenged jurisdiction as to Marconi's occupational petition. Counsel also certified that Marconi's "attorney confirmed he cannot object to a dismissal of the claims." In fact, Marconi opposed the motions, and we found nothing in the record supporting counsel's certification.

[3] Although United requested additional time to consider producing testimony, it ultimately rested without calling any witnesses.

i.e., assisting in the servicing of United planes because of a lack of local technicians at other airports.[4]  Marconi requisitioned parts from United's Chicago and San Francisco operations, but these would routinely be delivered first to Newark and then to Marconi in Philadelphia.  Marconi's supervisor sometimes would drive to United's facility at Newark to retrieve parts delivered there.

In a thorough and thoughtful written opinion, the JWC reviewed relevant case law and considered a noted commentator's "six grounds for asserting applicability of a particular state's compensation act."  Those are:

> (1) Place where the injury occurred;
>
> (2) Place of making the contract;
>
> (3) Place where the employment relation exists or is carried out;
>
> (4) Place where the industry is localized;
>
> (5) Place where the employee resides; or
>
> (6) Place whose statute the parties expressly adopted by contract.
>
> [13 Lex K. Larson, Larson's Workers' Compensation, § 142.01 (Matthew Bender, Rev. Ed. 2019).]

The JWC found that Marconi established factor five, residency.

---

[4]  Marconi recalled "stripping" a plane at the Atlantic City Airport on one occasion.

A-0110-18T4

Citing Williams v. Raymours Furniture Co., 449 N.J. Super. 559 (App. Div. 2017),[5] and Parks v. Johnson Motor Lines, 156 N.J. Super. 177 (App. Div. 1978), the JWC noted a seeming "dispute among . . . Appellate Division panels" as to whether residency alone was sufficient. After analyzing those decisions and others, the JWC concluded "any exercise of jurisdiction in extraterritorial injury cases . . . must be based upon New Jersey case law . . . and I can find no New Jersey case where jurisdiction based solely on residency was deemed sufficient."

The JWC also considered Professor Larson's fourth factor, whether United was "localized" in New Jersey. He found that "United . . . has a substantial presence in New Jersey" and, recounting Marconi's testimony, the JWC concluded United was "'localized' in New Jersey (as well as Pennsylvania)." However, citing our decision in Connolly v. Port Authority of New York & New Jersey, 317 N.J. Super. 315 (App. Div. 1998), the JWC concluded "Workers' Compensation Courts should decline to exercise jurisdiction even when the injured worker is a New Jersey resident and there is substantial localization of the employer's operations in New Jersey." The JWC found this to be "somewhat vexing," because our courts "will exercise

---

[5] The Court granted certification, 233 N.J. 119 (2017), but the petition was later dismissed on petitioner's motion.

jurisdiction in non-workers' compensation extraterritorial injury cases where the injured party resides here and the responsible party has substantial operations here."  (citing Rose v. Port of N.Y. Auth., 61 N.J. 129 (1972)).

The JWC observed that our court had approved the exercise of jurisdiction over extraterritorial injuries when the petitioner was a resident and New Jersey was the "[p]lace where the employment relation exists or is carried out."  13 Larson, § 142.01.[6]  Unlike the fourth factor, which "focuses on the employer's operations and presence in the state," this factor "focuses on the injured employee's duties, responsibilities, activities and operations in the state."

The JWC determined Marconi failed to carry his burden of establishing jurisdiction as to his first petition — the January 31, 2015 injury — because "there [was] no connection between New Jersey and the . . . accident at the Philadelphia Airport."  Regarding the occupational claim, the JWC concluded Marconi "failed to establish compliance with any of the three factors additionally imposed in a jurisdictional analysis of occupational claims as set forth in Williams v. Port Authority of N[ew] Y[ork] & N[ew] J[ersey], 175 N.J. 82 (2003)."  He dismissed both petitions, and this appeal followed.

---

[6]  The JWC mischaracterized this as factor two; it is Larson's third factor.

A-0110-18T4

Before us, Marconi argues that given the remedial nature of the WCA, which compels liberal construction in favor of compensation, and because of controlling dicta in the Court's decision in <u>Bunk v. Port Authority of New York & New Jersey</u>, 144 N.J. 176, 180-81 (1996), residency alone is sufficient to confer jurisdiction on New Jersey. Alternatively, he contends that his residency, combined with United's "localized" business in New Jersey, confers jurisdiction.

I.

While we defer to the factual findings of a judge of compensation if supported by sufficient credible evidence, <u>Lindquist v. City of Jersey City Fire Dep't</u>, 175 N.J. 244, 262 (2003), "[w]e owe no particular deference to the judge of compensation's interpretation of the law." <u>Sexton v. Cty. of Cumberland/Cumberland Manor</u>, 404 N.J. Super. 542, 548 (App. Div. 2009) (citing <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995); <u>Verge v. Cty. of Morris</u>, 272 N.J. Super. 118, 123 (App. Div. 1994)). In particular, we owe no deference to the JWC's interpretation of case law. <u>Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 455 N.J. Super. 165, 170-71 (App. Div. 2018). Whether a party may invoke the limited, statutory jurisdiction of the Division presents a question of law, to which we apply de novo review. <u>Raymours</u>, 449 N.J. Super. at 562.

Under the WCA, an injury is compensable only if it "aris[es] out of and in the course of employment."  N.J.S.A. 34:15-7.  The Division's jurisdiction "is limited to that granted by the Legislature and therefore 'cannot be inflated by consent, waiver, estoppel or judicial inclination[,]'" Bey v. Truss Systems, Inc., 360 N.J. Super. 324, 327 (App. Div. 2003) (quoting Riccioni v. American Cyanamid Co., 26 N.J. Super. 1, 5 (App. Div. 1953)), however, the WCA "does not address the issue of extraterritoriality."  Williams, 175 N.J. at 88. Determining whether the Division may exercise jurisdiction "requires consideration of the particular facts."  Connolly, 317 N.J. Super. at 318.

Because "jurisdiction over an out-of-state injury . . . becomes mixed with a choice-of-law analysis[,]" we have recognized that "[a]ny state having a more-than-casual interest in a compensable injury may apply its compensation act to that injury without violating its constitutional duty to give full faith and credit to the compensation statutes of other states also having an interest in the injury."  Id. at 319 (quoting 9 Larson, § 86.00 at 16-55 (1997));[7] see also Williams, 175 N.J. at 90 ("New Jersey generally will take jurisdiction and apply its Act when the State has a substantial interest . . . .").  Professor Larson's most recent assessment of the constitutional limits of jurisdiction is: "As matters now stand, it is clear that the state which was the locus of any one

---

[7] This volume and section of Larson has been replaced by 13 Larson, § 142.

of the first three items — contract, injury or employment — and probably also of the next two — employee residence and business localization — can constitutionally apply its statute if it wants to." 13 Larson, § 142.01.

With these principles in mind, we consider the issues presented in this case.

## II.

## A.

In Bunk, a New Jersey resident employed by the Port Authority was injured in a work-related truck accident in New York. 144 N.J. at 181. Pursuant to N.J.S.A. 34:15-43 as it then existed, a public employee like Bunk who was receiving a disability pension became ineligible for permanency benefits under the WCA. Id. at 181-82. Setting the stage for the issues presented, in a single sentence, the Court said: "As a resident of New Jersey, Bunk can bring his action in New Jersey." Id. at 181 (citing Parks, 156 N.J. Super. at 181) (emphasis added). Justice O'Hern moved on to the crux of the appeal:

> (1) whether the Legislature intends that the provisions of Section 43 that bar state employees from simultaneously obtaining accidental disability pension benefits and workers' compensation benefits apply to employees of the Port Authority, and (2) would the application of that state law to the bi-state agency impermissibly infringe on the independence of the bi-state agency.

[Id. at 184.]

Marconi argues the Court's dicta, emphasized above, is binding, and New Jersey residency alone confers jurisdiction on the Division. We disagree.

The rule on dicta of our Supreme Court is clear and not open to debate. State v. Dabas, 215 N.J. 114, 136-37 (2013). Simply stated, "matters in the opinion of a higher court which are not decisive of the primary issue presented but which are germane to that issue . . . are not dicta, but binding decisions of the [C]ourt." State v. Rose, 206 N.J. 141, 183 (2011). However, where dictum is "not necessary to the decision then being made[,]" it is "entitled to due consideration but does not invoke the principle of stare decisis." Bandler v. Melillo, 443 N.J. Super. 203, 210 (App. Div. 2015) (alteration in original) (quoting Jamouneau v. Div. of Tax Appeals, 2 N.J. 325, 332 (1949)). Additionally, "[m]uch depends upon the character of the dictum. Mere obiter may be entitled to little weight, while a carefully considered statement . . . though technically dictum, must carry great weight . . . ." In re A.D., 441 N.J. Super. 403, 422-23 (App. Div. 2015) (quoting Barreiro v. Morais, 318 N.J. Super. 461, 468 (App. Div. 1999)).

Since the Bunk Court was interpreting a provision of the WCA, it is tempting to conclude that establishing jurisdiction was "germane" to the issue

presented. The Court's statement implying that residency alone confers jurisdiction on the Division therefore would be binding precedent.

However, given the nature of the Port Authority's activities, the Court would have necessarily confronted the same issue — did section 43 bar Bunk's claim? — had Bunk been injured at Liberty International Airport or while driving his truck in New Jersey. In other words, Bunk's residency was only incidental to the legal issue confronted by the Court. See also Raymours, 449 N.J. Super. at 563-64 n.2 (noting "jurisdiction was not contested" in Bunk).

In Parks, which the Bunk Court cited to support the proposition that a New Jersey resident may file a workers' compensation claim in New Jersey for an extraterritorial accident, we squarely confronted the jurisdictional issue. There, the petitioner, a New Jersey resident, worked for a North Carolina cargo corporation and was injured in Pennsylvania. 156 N.J. Super. at 179-80. After finding that New Jersey was the "point of origin" or the "destination" of nearly one-half of the petitioner's trips, we held that New Jersey was "an appropriate forum in the presence of residence and significant employment contacts." Id. at 180-81 (emphasis added).

Marconi cites no published or unpublished case where our courts have held that residency alone is sufficient to confer jurisdiction on the Division for an extra-territorial workplace injury. Indeed, our courts have always required

more.  See, e.g., Raymours, 449 N.J. Super. at 563 (residency and "some employment contacts here") (citing Parks, 156 N.J. Super. at 180-81; Beeny v. Teleconsult, Inc., 160 N.J. Super. 22, 27-28 (App. Div. 1978)); Int'l Schools Servs., Inc. v. N.J. Dep't of Labor, 408 N.J. Super. 198, 205 (App. Div. 2009) (same); Connolly, 317 N.J. Super. at 320 (same).  We conclude that residency alone is an insufficient basis to confer jurisdiction on the Division for extra-territorial workplace injuries.[8]

## B.

Marconi alternatively contends his residency, coupled with the JWC's finding that United was a "localized" employer, is sufficient to confer jurisdiction.  The JWC concluded that in Connolly we rejected the proposition that residency and substantial localization of the employer's operations in New Jersey were sufficient to confer jurisdiction on the Division.  It suffices to say the JWC misinterpreted our holding.

In Connolly, a New York resident-employee of the Port Authority filed for benefits in New Jersey claiming an occupational hearing loss.  317 N.J.

---

[8]  This appeal does not implicate the "'special mission' exception" to the general rule that accidents occurring outside the workplace are not compensable.  See N.J.S.A. 34:15-36.  This exception may cover extra-territorial work related injuries, because it "allows compensation at any time for employees . . . required to be away from the conventional place of employment[,] if actually engaged in the direct performance of employment duties."  Zelasko v. Refrigerated Food Express, 128 N.J. 329, 336 (1992).

Super. at 318.  Although the petitioner never lived in New Jersey and worked entirely in New York, the JWC concluded that Larson factor four, the "'place where the industry is localized[,]' was . . . determinative[,]" and because the Port Authority was localized in both New Jersey and New York, "jurisdiction could be posited in either state."  Id. at 318-20.

We rejected this conclusion, stating, "no case in this jurisdiction or any other . . . ha[d] adopted such a broad base for jurisdiction . . . where there are virtually no New Jersey employer/employee contacts, or any other New Jersey contacts incidental to the alleged injury or occupational loss or the employee himself."  Id. at 320.  Larson's fourth factor — localization — was "not sufficient ipso facto to establish jurisdiction."  Id. at 321.  Citing prior precedent, we noted that New Jersey could exercise jurisdiction if it were the site of the injury, the place of the employment contract or hiring, or the employee's residence, when there were also some employment contacts in the state.  Ibid.  "Finally, where there exists neither location of the injury, location of the employment contract or hiring, or residency of the employee in New Jersey, jurisdiction may still arise where the 'composite employment incidents present a[n] . . . identification of the employment relationship with this State.'"  Id. at 320-21 (alteration in original) (quoting Phillips v. Oneida Motor Freight, Inc., 163 N.J. Super. 297, 303 (App. Div. 1978)).

A-0110-18T4

We noted that in no state workers' compensation scheme was localization alone sufficient to confer jurisdiction. Id. at 321 (citing 9 Larson, § 87.50 at 16-157 to 16-158). That apparently remains true today. See 13 Larson, § 143.05 ("[E]xcept for an early period in Minnesota, [localization] has never been held sufficient in itself to confer jurisdiction over out-of-state injuries. In a few states, however, it is relevant in conjunction with other tests."). Despite the Port Authority's localized presence in New Jersey, we concluded "there was no . . . employment relationship between the Port Authority and petitioner present in New Jersey," and therefore the Division lacked jurisdiction. Connolly, 317 N.J. Super. at 322.

The issue here is whether Marconi's residence, coupled with United's localized presence in New Jersey, confers jurisdiction on the Division. For companies like United that conduct business in not only many states, but also internationally, what does having a "localized" presence in a state mean and why should that matter in the analysis?

Professor Larson explains the rationale for the rule:

> The state in which the employer's business is localized has a relevant interest in a compensable injury . . . since the obligation side of the compensation relation is as much a part of that relation as the benefit side, and since the burden of payment would ordinarily fall most directly on the employer and community where the industry is centered.

14

> [13 Larson, § 143.05 (footnote omitted).]

See also id. at § 142.03[4] ("[T]he place where the industry is localized has a special interest, in that the burdens and costs of compensation fall most directly upon employers and consumers in the area where the industry is centered.").

While none of our reported decisions have specifically addressed what "localization" means for purposes of the analysis, some jurisdictions have specifically adopted statutes that define the concept.

Pennsylvania has an extraterritorial injury provision that extends jurisdiction if the petitioner's employment is "principally localized in [Pennsylvania]." Minus v. Workmen's Comp. Appeal Bd., 496 A.2d 1340, 1341 (Ct. App. 1985) (quoting 77 P.S. § 411.2(a)(1)). The statute provides, in relevant part, that the employment is "principally localized" in Pennsylvania if the employer "has a place of business in" Pennsylvania and "[the employee] regularly works at or from such place of business," or "he is domiciled and spends a substantial part of his working time in the service of his employer" in Pennsylvania. Id. at 1341-42 (quoting 77 P.S. § 411.2(d)(4)).

Similarly, the District of Columbia has a specific extraterritorial injury provision, which provides that its workers' compensation act will cover a claim if at the time of the injury the petitioner's "employment was 'localized

principally in the District of Columbia.'" <u>Lincoln Hockey, LLC v. D.C. Dep't of Emp't Servs.</u>, 997 A.2d 713, 716 (D.C. 2010) (quoting D.C. Code § 32-1503(a)(2)). "'[E]mployment principally localized in the District' means 'a claimant's employment relationship with this jurisdiction must have contacts <u>more substantial here than in any other place</u>.'" <u>Ibid.</u> (emphasis added) (quoting <u>Petrilli v. D.C. Dep't of Emp't Servs.</u>, 509 A.2d 629, 633 (D.C. 1986)).

However, some jurisdictions without statutory provisions, like New Jersey, have applied common law concepts in describing the meaning of "localization." In <u>Shannon v. Communications Satellite Corp.</u>, the plaintiff's widow sought workers' compensation benefits when her husband, a resident of Maine, was killed in Thailand while working on a long-term assignment for the defendant, the operator of a world-wide communications system. 302 A.2d 582, 583 (Me. 1973). The state Industrial Accident Commission dismissed the claim for lack of jurisdiction finding the plaintiff's residence was the only qualifying "contact" with the state. <u>Id.</u> at 585.

In reversing and concluding Maine could constitutionally exercise jurisdiction, the court held the Commission erroneously decided the defendant "was 'localized' in Washington, D.C., and, therefore, precluded all legal possibility of multiple 'localizations,' notwithstanding that [the defendant]

16

conducts substantial business operations at its [location] in . . . Maine." Id. at 586. The court explained:

> The decided cases in which . . . "localization" of the employer's business has been relied upon . . . reveal that "localization" has not been thought to signify, in multiple operations situations, that single place of maximum, or predominant, contact to the exclusion of all lesser "localizations." "Localization," rather, has been taken to mean that any one among a plurality of states may be said to have a legitimate subject-matter interest so long as the business of the employer is conducted in a manner which establishes a "substantial presence" of the employer in such state.
>
> [Ibid. (citing Hagberg v. Colonial & Pac. Frigidways, Inc., 157 N.W.2d 33 (Minn. 1968)).]

However, in Hagberg, the plaintiff, a Minnesota resident, was injured while working for the defendant when a tractor-trailer, in which he was a passenger, overturned on a Montana highway. 157 N.W.2d at 36. The defendant was an Iowa corporation and entered into a contract of employment with the plaintiff in Iowa. Ibid. The trial court found that the defendant did "a substantial amount of business in Minnesota," including shipping produce into the state on a weekly basis. Id. at 37-38. The Minnesota Supreme Court held:

> [t]hat defendant may have conducted a greater share of its business in other states is not controlling. We have stated in a number of cases that a business may be localized in more than one state. If an employer conducts a substantial amount of its business in Minnesota, it is localized in this state and subject to our workmen's compensation laws, at least with

> respect to resident employees whose duties to a substantial extent consist of implementing the localized business.
>
> [Id. at 38 (emphasis added) (citations omitted).]

In affirming the trial court's judgment, the court emphasized that seventy-five to eighty percent of the plaintiff's deliveries were made inside Minnesota, and "[i]t was merely fortuitous that the accident happened while plaintiff was hauling a load not destined for Minnesota." Ibid.[9]

Although these out-of-state decisions are of limited assistance, we nevertheless distill a standard which finds voice in the governing principle of the WCA itself, i.e., that an injury is compensable only if it "aris[es] out of and in the course of employment." N.J.S.A. 34:15-7. It is the nature and frequency of the employee's relationship with the localized presence of the employer that lends weight to the fourth Larson factor. In other words, in this case, did Marconi's "duties to a substantial extent . . . implement[] the localized business" of United in New Jersey? Hagberg, 157 N.W.2d at 38; see Connolly, 317 N.J. Super. at 322 (finding lack of jurisdiction when no

---

[9] Minnesota subsequently amended its compensation act to add an extraterritorial injury provision. Follese v. Eastern Airlines, 271 N.W.2d 824, 832-33 (Minn. 1978). The statute as amended generally prohibits claims for extraterritorial injuries to its residents unless they are temporarily employed outside the state, as broadly defined by the statute. Id. at 833 n.12.

18

"employment relationship between the [employer] and petitioner present in New Jersey").

Based upon a fair reading of the record, we must conclude that it did not. Marconi's contacts with United's Newark hub were, in large part, to advance Marconi's ability to perform his work in Philadelphia. Even when Marconi used United's facilities at Liberty International Airport, it was to serve United's interests elsewhere around the country. Essentially, nothing in the course of Marconi's two-decade employment with United advanced the company's localized interests in New Jersey. In these circumstances, although United maintained a localized business interest in Newark, New Jersey has no substantial interest in exercising its jurisdiction over the petitions. Williams, 175 N.J. at 90. We hasten to add that our holding is limited to the facts of this case. See Connolly, 317 N.J. Super. at 318 (jurisdiction decision "requires consideration of the particular facts").

For the sake of completeness, we note our agreement with the JWC's conclusion that Marconi failed to establish jurisdiction over his petition for occupational injuries. In Williams, the Court held that in order to invoke the jurisdiction of the Division in extraterritorial occupational injury claims,

> the petitioner must demonstrate either that (1) there was a period of work exposure in this State that was not insubstantial under the totality of circumstances and given the nature of the injury; (2) the period of

exposure was not substantial but the materials were highly toxic; or (3) the disease for which compensation is sought was obvious or disclosed "by medical examination, work incapacity, or manifest loss of physical function," while working in New Jersey.

[175 N.J. at 90 (quoting <u>Bond v. Rose Ribbon & Carbon Mfg. Co.</u>, 42 N.J. 308, 311 (1964)).]

Marconi did not carry his burden under this exacting standard.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0110-18T4